## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Nelkin & Nelkin, P.C., | § | Case No. 23-34054 |
| | § | |
| Reorganized Debtor. | § | Chapter 11 (Subchapter V) |
| | § | |
| | § | |

## DEBTOR'S EMERGENCY MOTION TO ENFORCE THE CONFIRMATION ORDER AND TO HOLD STEVEN SCHREIBER (INDIVIDUALLY AND AS PURPORTED REPRESENTATIVE OF EUGENE SCHREIBER'S ESTATE), TWO RIVERS COFFEE, LLC AND THEIR COUNSEL, RAPHAEL ROSENBLATT, <u>IN CIVIL CONTEMPT</u>

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO**

**THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

> Debtor requests expedited consideration due to the Schreiber Parties requests to the district court in the Eastern District of New York to rule on the discharged claims. Pending relief, there is also a *Motion To Transfer* the proceeding to the Southern District of Texas. Expedited consideration by this Court would resolve many pending issues, both here and in New York, with a contrary ruling in New York prior to consideration by this Court creating potential conflicting opinions for the parties. The Debtor requests the Court to consider the issues on or before July 25, 2025.

Debtor Nelkin & Nelkin, P.C., ("Debtor" or "N&N"), files this *Emergency Motion to Enforce the Confirmation Order and for Contempt* (the "Motion"), and respectfully shows the Court as follows:

## I.    PRELIMINARY STATEMENT

The Debtor's Plan of Reorganization was confirmed on February 14, 2025. **ECF No. 373 (the "Confirmation Order").** The Plan became effective on March 3, 2025. **ECF No. 379**. The Confirmation Order provides in material part:

> 6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on:
>
> (a) the Debtor(s); (b) all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**ECF No. 373**, ¶ 6

> 8.     All of the Debtor's assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order.

ECF No. 373, ¶ 8

> 13.     Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

ECF No. 373, ¶ 13

> 16.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors.

ECF No. 373, ¶ 16

Steven Schreiber (individually and as the purported representative of Eugene Schreiber's Estate)(the "Schreibers") and Two Rivers Coffee, LLC ("TRC")(collectively with the Schreibers,r the "Schreiber Parties") intentionally chose not to file proofs of claims in this case and have repeatedly advised this Court that they are not creditors of N&N and do not have claims against N&N or its property. Nonetheless, they continue to pursue claims against N&N and its property

in Federal Court for the Eastern District of New York (the "EDNY"). In the EDNY, the Schreiber Parties continue to seek to have N&N's earned fees forfeited and their charging lien vacated.

The actions of the Schreiber Parties and their counsel in the EDNY, Raphael Rosenblatt, are a knowing, intentional and deliberate attempt to circumvent the discharge and revesting provisions of the Confirmation Order.

## II.   FACTS

### A. N&N's Successful Representation of the Schreibers

1.      From May 6, 2015 until August 13, 2018, N&N through its attorneys, Carol Nelkin and Jay Nelkin, represented the Schreibers against Emil Friedman and various individuals and entities associated with him in a dispute over the ownership of TRC. N&N undertook the representation of the Schreibers pursuant to a contingent fee Engagement Letter in which N&N was to be paid "one-third of the total recovery, if any, [the Schreibers] receive (including any funds, increased equity or other benefits), by virtue of a settlement or final judgment in the Litigation." N&N did not represent TRC except in a derivative capacity.

2.      On December 2, 2015, N&N filed *Schreiber v. Friedman, et al*, Case No.: 15-cv-06861 (CBA)(CLP) in the EDNY (the "EDNY Litigation") raising allegations that included money laundering, embezzlement, usurpation of corporate opportunities and other claims under state and federal RICO statutes against 26 Defendants who were subsequently represented by 7 law firms. The Schreibers engaged N&N by written Engagement Letter. **Exhibit #7.**

3.      On December 4, 2015, N&N secured a Temporary Restraining Order, which effectively removed control of TRC from Friedman and transferred day to day decision-making and operations to the Schreibers, thus retaining their six figure salaries and benefits when, prior to the filing of the lawsuit, the Schreibers were about to lose their entire equity in TRC due to their inability to repay a $6.426 million

loan plus interest to a Friedman-related entity. This Order was ultimately converted into a preliminary injunction.

4.     As a result of N&N's hard work over a three-year period, the Schreibers' received a multi-million dollar settlement. The settlement benefits included but were not limited to

    a.  Cash payment from the defendants of $2,860,000;

    b.  Recovery of Steven's and Eugene's respective 11.5% interests in TRC that they had assigned to defendants;

    c.  Recovery of another partner's 17% interest in TRC and the transfer of that interest in TRC to Steven and Eugene (8.5% each to Steven and Eugene);

    d.  The transfer of Friedman's 60% interest in TRC to Steven and Eugene;

    e.  The transfer of the $6.426 million loan (plus approximately $1.6 million in back interest) from defendants to Steven and Eugene personally resulting in substantial tax benefits to the Schreibers;

    f.  The recoupment of the lease to the TRC manufacturing facility and office (and over $1,600,000 in stated leasehold improvements);

    g.  The cancellation of an agreement requiring TRC to sell goods to certain Defendants at below wholesale prices and that prohibited TRC from selling sampler packs, which accounted for millions of dollars in annual sales at the time of settlement and continues to form a large portion of TRC's sales; and

    h.  Numerous other valuable benefits.

5.     The settlement agreement was signed by all 37 parties, including the Schreibers on August 10, 2018 and became binding on the parties on August 13, 2018.

**B.    The Schreiber Parties Were Pleased With The Settlement But Did Not Want To Pay N&N's Attorneys' Fees**

6.    On August 13, 2018 [the same day as the Settlement Agreement became binding], Eugene Schreiber filed a letter on behalf of the Schreiber Parties with Magistrate Judge James Orenstein stating: "***Without wishing to disturb or delay your approval of the settlement, I am writing because the Nelkin & Nelkin firm is demanding what I believe are unjust fees and a payment schedule from Steven, me and Two Rivers that does not seem fair.***" **Exhibit #1** (emphasis added).

7.    Later that same day, Hillel Parness, the Schreiber Parties' attorney, filed a letter on their behalf stating that neither of the Schreibers, who were N&N's only clients in the EDNY Litigation, owed N&N any fees, thereby publicly repudiating their contingency fee agreement. **Exhibit #2**

8.    On August 15, 2018 following the Schreibers' refusal to pay both the initial agreed-upon contingency amount, and after they had publicly accused N&N of ethical misconduct and repudiated the fee agreement, N&N served a *Notice of Charging Lien* on all parties to the EDNY Litigation.  On that same date, Hillel Parness filed a motion with the Court seeking a Declaratory Judgment regarding N&N's fees and filed the notice of N&N's Charging Lien as an exhibit. **Exhibit #3; Exhibit #4**. Thus, the Schreiber Parties during the period August 13 to 15, 2018 initiated the fee dispute before the EDNY.

9.    On December 21, 2018 the Schreiber Parties and N&N, through their respective counsel, entered into a Stipulation and Order Regarding Deposit Under Fed. R. Civ. P. 67 pursuant to which a portion of the settlement funds were deposited into the registry of the Court and other settlement proceeds were held in escrow by the law firm Frankfurt Kurnit Klein & Selz.

10.    On March 7, 2019 the Schreiber Parties filed a motion to extinguish N&N's charging lien and forfeit N&N's fee in the EDNY (the "Charging Lien and

Fee Forfeiture Litigation"). **Exhibit #5**. This motion remains pending in the EDNY and, despite entry of this Court's Confirmation Order dated February 14, 2025, the Schreiber Parties continue to actively prosecute the Charging Lien and Fee Forfeiture Litigation in the EDNY.

## C.    Proceedings In This Court

### 1. The Schreiber Parties Intentionally Failed To File Proofs of Claims And Disavow Being Creditors

11.    On August 28, 2023, this Court set November 27, 2023 as the last day to object to dischargeability under section 523 and set December 26, 2023 as the last day to submit Proofs of Claims for non-governmental units. **ECF No. 5**.

12.    Despite being aware of this date, none of the Schreiber Parties objected to dischargeability of any of the Debtor's debts, including the disputed debts related to the Schreiber Parties that the Debtor listed on its schedules.

13.    On September 18, 2023, the Debtor filed a series of documents required by this Court including Schedule A/B: Assets--Real and Personal Property (Official Form 206A/B); Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D); Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F); Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G); Schedule H: Codebtors (Official Form 206H), and a Summary of Assets and Liabilities for Non-Individuals (Official Form 206-Summary). **ECF No. 24**.

14.    On its Schedule A/B in the "All other assets" section the Debtor specifically listed the charging lien it possessed in the EDNY as an asset and estimated its value to be in excess of $12,750,000.00. *Id*. [¶74, Page 7 of 32].

15.    On its Schedule E/F: Creditors Who Have Unsecured Claims the Debtor specifically listed each of the Schreiber Parties as having pre-petition

litigation claims against the Debtor and listed each of the Schreiber Parties' litigation claims as disputed. *Id*. [¶¶ 3.8, 3.13, 3.16, Pages 12 & 14 of 32].

16.     Each of the Schreiber Parties was provided with notice of the Debtor's voluntary petition for bankruptcy and each of the Schreiber Parties was aware of all Court related deadlines in this case.

17.     Despite being aware of the bar date, the Schreiber Parties intentionally did not file proofs of claims by December 26, 2023.  Rather on December 27, 2023, one day after the bar date, the Schreiber Parties filed an Objection To Nelkin & Nelkin, P.C.'s Subchapter V Plan of Reorganization in which they expressly confirmed to this Court that "[n]one of the Interested Parties [defined as "Steven Schreiber, Eugene Schreiber and Two Rivers Coffee, LLC"] have filed a proof of claim and none are creditors of the Debtor" thereby expressly abandoning their claims against Debtor.  **ECF No. 83** [¶ 3, Page 1 of 7].

18.     On February 29, 2024, the automatic stay was terminated with respect to the Schreibers and the EDNY litigation. See **ECF No. 257**.

19.     On May 28, 2024 the Schreiber Parties again confirmed to this Court that they were not creditors of the Debtor and that they intentionally chose not to file proofs of claims against the Debtor, repeatedly making statements confirming "none of the TRC Parties are creditors in the underlying bankruptcy case of the Debtor" and "[t]he TRC Parties have not filed a proof of claim in the bankruptcy case"  and "[n]one of the TRC Parties filed proofs of claims."  [Adversary Case 24-3061, **ECF No. 36** ¶¶ 25, 34-35, 38-39, Pages 16-18].

20.     The Schreiber Parties and their counsel have continued to assert that 1) they did not file proofs of claim against the Debtor and 2) they are not claiming any interest in any property claimed to be owned by the Debtor.  On August 20, 2024, the Schreiber Parties confirmed to this Court that the Schreiber Parties have

abandoned any claim or challenge to the Debtor's property or assets expressly stating:

> During the pendency of this bankruptcy case, there has been no adverse claim by any person or entity to property claimed to be owned by the Debtor and the proof of claim deadline in the underlying bankruptcy case has long since passed. The Two Rivers Parties have not asserted, at any time during the pendency of this bankruptcy case (or even in the underlying matter out of which this Adversary Proceeding arises), that they claim any ownership interest in any of the Debtor's property or possess any property of the Debtor.

[Adversary Case 23-2005, **ECF No. 119**, Page 2 ¶ 3].

21.     In that same court filing the Schreiber Parties reiterated that they had abandoned any claim or challenge to Debtor's pre-petition assets or property of the Debtor's bankruptcy estate expressly stating:

> The Debtor alleges that there is or may be a title issue involving its pre-petition assets (i.e. property of the estate 11 U.S.C. § 541). However, no one has filed a proof of claim asserting any challenge to title giving rise to a question of the ownership of the Debtor's assets.

*Id.*, Page 7 ¶ 15].

22.     The Schreiber Parties have made similar admissions that they did not file proofs of claims and are not creditors of the Debtor in each of the 3 other objections to the Debtor's Proposed Plans that they filed in this case. *See e.g.* **ECF No. 158**, ¶ 7, Page 5 of 9; **ECF No. 222**, ¶ 10, Page 6 of 16; **ECF No. 317**, ¶ 7, Page 5 of 15].

## 2.     The Schreiber Parties Did Not Object To Debtor's Amended Chapter 11 Plan

23.     On January 19, 2025, the Debtor filed an Amended Chapter 11 Plan (the "Plan") **ECF No. 337**.

24.     The Schreiber Parties did not object to the Plan, despite having filed 4 prior objections to earlier plans proposed by the Debtor.

25.     On February 14, 2025 this Court entered its *Order Confirming Debtor's Plan of Reorganization Pursuant to 11 U.S.C. ¶ 1191(a)* (the "Confirmation Order"). **ECF No. 373**. Attached as Exhibit A to the Order was a copy of the Debtor's Plan of Reorganization, which pursuant to ¶ 1 of the Confirmation Order was "approved in each and every respect" and "incorporated by reference into" the Confirmation Order. *Id.* at ¶1, Page 3 of 33.

**3.  Having Failed To File Proofs Of Claims And Under The Terms Of The Confirmation Order The Schreiber Parties Are Enjoined From Continuing To  Pursue Claims Against The Debtor But Continue To Do So**

26.     Pursuant to the Plan and Confirmation Order, the Schreiber Parties and their counsel are enjoined from continuing to prosecute the Charging Lien and Fee Forfeiture Litigation.

27.     The Schreiber Parties are also barred from continuing to prosecute the Charging Lien and Fee Forfeiture Litigation against the Debtor because they failed to file any proofs of claim by the claim bar date and have expressly abandoned, disclaimed and waived any claims or causes of action they may have once had.

28.     The Schreiber Parties and their counsel have not dismissed the Charging Lien and Fee Forfeiture Litigation against the Debtor.  To the contrary they continue to flout this Court's express Confirmation Order as well as the claim bar date and the dischargeability deadline. The actions of the Schreiber Parties and their counsel are deliberate, calculated and designed to circumvent the exclusive jurisdiction of this Court and with the intent to harm Debtor and Debtor's creditors for their own benefit.

29.    The Schreiber Parties and their counsel are aware of the applicable provisions of the Confirmation Order.

30.    The Schreiber Parties and their counsel have repeatedly assured this Court that: "[n]o party, including the Two Rivers Parties, has challenged the Debtor's ownership of the Debtor's property during the bankruptcy case." *See e.g.* Adversary 23-2005, ECF No. 156, ¶ 30, Page 13 of 18.    However, the Schreiber Parties and their counsel, Mr. Rosenblatt, are doing just that in the EDNY in contempt of this Court's Confirmation Order.  The Schreiber Parties do so despite admitting that "[t]he Debtor's Plan, revests the Debtor's property in the Reorganized Debtor and no party has objected, and the Plan was confirmed and the Confirmation Order is a final order. There is simply no dispute regarding the Reorganized Debtor's ownership of the Reorganized Debtor's property." *Id.*

31.    In violation of the discharge and revesting provisions of the Confirmation Order dated February 17, 2025, Mr. Rosenblatt,  as counsel for the Schreiber Parties, wrote to the Magistrate Judge in the EDNY and advised that Court that the Confirmation Order had been entered and that and as a result the Schreiber Parties could continue litigating the Charging Lien and Fee Forfeiture Litigation against the Debtor in the EDNY.    Mr. Rosenblatt represented to the EDNY Magistrate Judge that:

> As this relates to the pending Motion to Transfer Venue [Docket Entry No 742] filed by the Nelkins, a determination of whether any fees are due and owing to the Nelkins was not a condition precedent to confirmation of the Bankruptcy Plan.  Now that the Plan has been confirmed, the only issue remaining before this Court is the pending fee dispute that can proceed without regard to the Texas proceeding, which have now confirmed a Plan.

**Exhibit #6**

32.    The Schreiber Parties continue to actively litigate their claims against the Debtor in the Charging Lien and Fee Forfeiture Litigation in the EDNY.

## III.    ARGUMENT & AUTHORITIES

### A. The Schreiber Parties And Their Counsel Are Knowingly And Deliberately Violating The Discharge Provisions Of The Confirmation Order By Continuing To Pursue Claims Against The Debtor In The Charging Lien And Fee Forfeiture Litigation And Are Subject To Contempt

33.    First, The Schreiber Parties believe that the lifting of the automatic stay on February 29, 2024 relieves them of their obligation to comply with this Court's subsequent orders or to comply with the Discharge Injunction. This is not the case. The Discharge Injunction begins at discharge and is unaffected by prior or subsequent stay modification.

34.    For example, in *In re McCulloch*, No. 12-20084, 2013 Bankr. LEXIS 4257 (Bankr. S.D. Tex. 2013), affirmed, *McCulloch v. McClintock (In re McCulloch)*, No. 2:13-CV-374, 2014 U.S. Dist. LEXIS 41262 (S.D. Tex. 2014), the Debtors' Motion For Sanctions for Violation of the Discharge Injunction was granted against a party who had previously been granted an Order lifting the stay, permitting a prepetition claim against the Debtor "to go forward to judgment" in a state court proceeding. As in the instant case, the party who was granted relief from the stay participated in the bankruptcy proceedings and did not object to the Debtors' discharge. *Id*. at *2-3.  In granting the Motion for Sanctions, the Court in *McCulloch* found that there had been a willful violation of the discharge injunction, ordered that the offending party immediately dismiss the Debtors from the state court case, and awarded monetary sanctions.  In doing so, the Court held that the offending party's "reliance upon the pre-discharge lifting of the stay is misplaced" and that "[e]ven if the Stay is lifted during the case, the discharge injunction begins at discharge and is unaffected by an order lifting the stay."  *Id*. at *5-6 (emphasis added); see also *In re Schwartz*, No. 12-37089-LMI, 2020 Bankr. LEXIS 2477, *5 (Bankr. S.D. Fla. 2020)

("[A] Stay Relief Order has no bearing on what is and is not a violation of the discharge injunction; the automatic stay expires upon a debtor getting a discharge.")

35.    Paragraph 8 of the Confirmation Order provides that:

> Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

**ECF No. 373**, ¶6, Pages 4-5 of 33.

36.    Thus, the Confirmation Order expressly discharged the Debtor pursuant to 11 U.S. Code § 1141 (d)(1).

37.    Pursuant to the express language of the Bankruptcy Code, the Debtor's discharge in this case pursuant to 11 U.S.C. § 1141(d)(1) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

38.    Section 1141(d)(1) specifies that except as otherwise provided in the subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation. As stated by United States Bankruptcy Judge Christopher M. Lopez of this Court:

> Section 1141(d)(1) of the Bankruptcy Code provides that a confirmed chapter 11 plan discharges a debtor from any debt that arose before plan confirmation, regardless if a creditor filed a proof of claim, a claim was allowed under the Bankruptcy Code, or a creditor voted to accept the plan. 11 U.S.C. § 1141(d)(1)(A). The effect of a discharge is found under Section 524(a) of the Bankruptcy Code. Section 524(a)(2) states that a discharge "operates as an injunction against the commencement or continuation of an action" or any act

to recover against discharged claims. *Id.* § 524(a)(2). The legislative history of Section 524 explains the broad scope of this injunction:

> The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.

> . . . [Section 524] is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that.

*In re United Ref. Co.*, No. 83-03935 CHAPTER 11, 2021 Bankr. LEXIS 105, at *12-13 (Bankr. S.D. Tex. Jan. 16, 2021).

39.    "Section 1141 of the Bankruptcy Code provides that creditors are bound by the terms of a confirmed plan. 11 U.S.C. § 1141(a). And a bankruptcy court confirmation order is binding and final and has the weight of a final judgment for res judicata purposes. ….Thus, Section 1141 confirms the finality of chapter 11 plans, which allows parties to rely on its terms forever." *Id.* at *15-16 (Bankr. S.D. Tex. Jan. 16, 2021)(internal citations omitted).

40.    While the Schreiber Parties are acting as creditors by pursuing claims against the Debtor and thus bound by the Confirmation Order pursuant to 11 U.S.C. § 1141(a), they are bound by the Confirmation Order as "interested parties" even if they are not deemed to be creditors. **ECF No. 373**, ¶¶6, 14 Pages 4-5, 7 of 33.

41.    By continuing their prepetition litigations against the Debtor, the Schreiber Parties and their counsel are acting directly contrary to the § 524(a)(2) injunction regarding the "continuation of an action."    The net effect of the discharge and revesting provisions was to shield the Debtor and its property from further litigation over the charging lien in the EDNY. The actions are also in direct contempt of the Confirmation Order.

42.     Violation of a Section 1141 discharge injunction is addressed by 11 U.S.C. § 105. *Placid Ref. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 613 (5th Cir. 1997). As stated by the Fifth Circuit:

> Moreover, we assent with the majority of the circuits which have addressed this issue and find that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105. This section provides in pertinent part:
>
> > (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.
>
> The language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code. We find that an order, such as the one entered by the bankruptcy court, which compensates a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code.

*Id.*

43.     "Under § 105, bankruptcy courts have broad authority to take any action that is necessary or appropriate to prevent the abuse of process. In applying § 105's plain language, courts have used § 105 to grant plaintiffs a broad range of

remedies, including any damage remedy available in a private cause of action. *Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 615 B.R. 108, 145 (Bankr. S.D. Tex. 2020). "Therefore, the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code. *Id.*

44.    This Court also has the authority pursuant to 11 U.S.C. § 1142(b) to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." Thus this Court can and should Order the Schreiber Parties and their counsel to cease violating the Confirmation Order and to perform all necessary acts required for the Debtor to recover its revested property.

45.    In the present case, the Confirmation Order's discharge provision compels the dismissal with prejudice of the Schreiber Parties' claims against the Debtor.

46.    The express language of the Bankruptcy Code makes clear that the claims at issue are covered by the discharge. The term "debt" used in Section 524 "means liability on a claim." 11 U.S.C. §101 (12).  Similarly, the Code defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101 (10).

47.    The Schreiber Parties cannot have it both ways – disclaiming to this Court that they are creditors or have any claim against the Debtor while simultaneously pursuing claims against the Debtor in the EDNY for fee forfeiture and to vacate the Debtor's charging lien.  If they are not creditors and have no claims (which by definition creditors have), then the Schreiber Parties' continued pursuit of these claims against the Debtor are frivolous, vexatious and sanctionable. If,

however, they are in fact creditors or acting like creditors, pursuing claims against the Debtor after such claims were discharged, then such claims are similarly frivolous, sanctionable and being pursued in contempt of this Court's Orders. Either way, the Schreiber Parties' claims must be dismissed with prejudice.

48.      One of the main purposes of bankruptcy is to provide debtors with a "fresh start in life."... A plan confirmation order and Sections 524 and 1141 of the Bankruptcy Code are essential elements of that fresh start. *In re United Ref. Co.*, 2021 Bankr. LEXIS 105, at \*18 (Bankr. S.D. Tex. Jan. 16, 2021) (internal citations omitted).

49.      Allowing the Schreiber Parties to continue to litigate their claims against the Debtor in violation of the protections afforded to the Debtor by the Bankruptcy Code, Bankruptcy precedents, the Confirmation Order and the discharge provisions would be improper. The Debtor should not be denied the fresh start to which it is entitled. As such, the Schreiber Parties' claims and causes of action must be dismissed with prejudice.

### B. The Schreiber Parties And Their Counsel Are Knowingly And Deliberately Violating The Discharge Provisions Of The Confirmation Order By Continuing To Pursue Claims Against The Debtor In The Charging Lien And Fee Forfeiture Litigation

60.      Irrespective of the multiple labels and descriptions provided by the Schreiber Parties, their claims in the EDNY are – the Debtor was discharged for cause – an equitable claim, resulting in a monetary recovery [fee forfeiture]. See **Exhibit #5**; **Exhibit #6**. Clearly a claim that should have been filed and prosecuted in the bankruptcy case. The consequence of not pursuing their prepetition claim is discharge.

61.    The Schreiber Parties are asserting claims to property of the Debtor that existed prepetition and which was vested in the Debtor free and clear of all claims, liens and encumbrances by confirmation of the Debtor's plan, *i.e.*, proceeds of the settlement obtained on behalf of the Schreiber Parties sufficient to pay their fees that are due. As explained by New York's highest court:

> Under the common law, the attorney was only entitled to a lien upon the judgment, but the scope of the charging lien was extended by statute to give the attorney a lien upon the client's cause of action as well. The lien comes into existence, without notice or filing, upon commencement of the action or proceeding (see, *Matter of Heinsheimer*, 214 N.Y. 361, 367 (1915); *Fischer-Hansen v Brooklyn Hgts. R. R. Co.*, 173 N.Y. 492 (1903); JUDICIARY LAW § 475). *In Matter of City of New York* (United States — Coblentz) (5 N.Y.2d 300, 307-308, cert denied sub nom. *United States v Coblentz*, 363 US 841), we stated that because a cause of action is a species of property, an attorney acquires a "vested property interest" in the cause of action at the signing of the retainer agreement and thus a "title to `property and rights to property'". Accordingly, the charging lien does not merely give an attorney an enforceable right against the property of another, ***it gives the attorney an equitable ownership interest in the client's cause of action***. The client's property right in his own cause of action is only what remains after transfer to the attorney of the agreed-upon share upon the signing of the retainer agreement (*Matter of City of New York,* supra). Similarly, in *People v Keeffe* (50 N.Y.2d 149, 156), we noted that with the signing of a retainer agreement that expressly assigns a portion of the proceeds of a cause of action to the attorney, the attorney "acquires * * * a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client." Manifestly, then, an attorney's charging lien is something more than a mere claim against either property or proceeds; ***an attorney's charging lien "is a vested property right created by law and not a priority of payment"*** (*Matter of City of New York*, 5 N.Y.2d 300, 306, supra).

*LMWT Realty v. Davis Agency*, 85 N.Y.2d 462, 467-68 (N.Y. 1995)(emphasis added)

62.     The interest in the claim or cause of action continues and follows to proceeds. See *Tunick v. Shaw*, 45 AD3d 145, 148-49 (1ˢᵗ Dept. 2007)(Charging lien in the client's cause of action follows the proceeds, wherever and in whatever form they may be found); see also *Krantz & Berman, LLP v. Dalal*, 2010 US Dist. LEXIS 46545, at *18-19 (S.D.N.Y. May 11, 2010)( "New York's statutory charging lien is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action." Charging lien follows the proceeds.)

63.     In the EDNY, the Schreiber Parties are pursuing prepetition claims which seek to determine that N&N was discharged for cause with the requested remedy of fee forfeiture. See **Exhibit #5.**

64.     The litigation was settled and funded prepetition.

65.     As stated above, the Schreiber Parties asserted prepetition and continue to assert claims requesting forfeiture against N&N in direct contempt of the Confirmation Order in this case.

66.     When, as here, an attorney's retainer agreement with the client assigns to the attorney a portion of the proceeds of the action, the attorney acquires a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client.  *Louima v. City of N.Y.,* No. 98 CV 5083 (SJ), 2004 U. S. Dist. LEXIS 13707 at *178-79 (E.D.N.Y. July 21, 2004). The attorney is deemed a "purchaser" of the property interest because of his provision of services. *In re City of N.Y.*, 5 N.Y.2d 300, 307-09, 184 N.Y.S.2d 585, 590-92, 157 N.E.2d 587, 590-92 (1959) (holding attorney "acquired a vested property interest in the award which he had 'purchased' for a good and valuable consideration, to wit: his services as rendered" and was thus a "purchaser" of the property).

67.    Thus, as a matter of law, the Debtor had a vested property right in the proceeds of the settlement agreement in the Charging Lien and Fee Forfeiture Litigation as a result of its charging lien. *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 718 (Bankr. S.D.N.Y. 2008)(An attorney's charging lien is presumptively valid and is a vested property right).

68.    Also, by waiting until they received the benefits of the successful settlement before raising and asserting the claims against the Debtor, the Schreiber's are foreclosed on their claims, now being prosecuted for malice and in contempt of this Court's Confirmation Order. See *Kasmin v. Josephs*, 228 AD3d 431, 432 (1st Dept. 2024); *Friedman v. Park Cake, Inc*., 34 AD3d 286 (1st Dept. 2006).

69.    By attempting to invalidate the Debtor's property rights, which are now free and clear of all liens, claims and encumbrances, the Schreiber Parties and their counsel are in contempt of the Confirmation Order and the Discharge Injunction.

70.    Debtor requests the Court hold Steven Schreiber, individually and in his purported role as representative of Eugene Schreiber's Estate, TRC and their counsel Raphael Rosenblatt in civil contempt.

71.    'Civil contempt can serve two purposes,' either coercing compliance with an order or 'compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct.'" *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009).   "The elements to establish civil contempt are '(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order.'" *Id. (quoting Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)).

72.    It is well established that bankruptcy courts possess civil contempt power.  *In re White-Robinson*, 777 F.3d 792, 795 (5th Cir. 2015).  "Bankruptcy Code provisions, Bankruptcy Rules and court orders may not be violated without recourse."  *In re Rodriguez*, 517 B.R. 724, 729 (Bankr. S.D. Tex. 2014).  Section

105(a) of the Bankruptcy Code provides bankruptcy courts broad authority to "take any action that is necessary or appropriate to prevent an abuse of process." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (internal quotations omitted).  Bankruptcy courts must make a finding of bad faith to impose sanctions pursuant to their inherent authority, but "bad faith may be inferred." *VSP Labs, Inc. v. Hillair Capital Invs. LP*, 619 B.R. 883, 904 (N.D. Tex. 2020); *see also In re Skyport Glob. Commun., Inc.*, 642 F. App'x 301, 304 (5th Cir. 2016) (affirming sanctions where bankruptcy court "repeatedly stated that it found their state court petition was . . . a direct violation of the injunction provisions contained in Skyport's Chapter 11 confirmation order[.]").

73.    The Fifth Circuit has held that an order "which compensates the debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).  Although parties generally bear their own litigation costs, "one exception to this rule is for willful disobedience of a court order." *Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428, 446 (5th Cir. 2013) ("Given Anti-Lothian and its attorneys' decision to ignore the injunction order, we have little difficulty in concluding that this exception applies here.").

74.    Section 105 "is broad enough to empower bankruptcy courts to sanction attorneys in conjunction with their inherent power to implement the Bankruptcy Code and prevent abuses of bankruptcy process." *In re Rollings*, No. 04-31511-H3-7, 2008 Bankr. LEXIS 993, at *30 (Bankr. S.D. Tex. Mar. 31, 2008).  The Supreme Court has also held that a court's inherent power permits it to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991).  The Supreme Court's

holding in *Chambers* "allows for sanctions when a party's 'bad-faith conduct,' beyond that occurring in trial, is 'in direct defiance of the sanctioning court.'" *Skyport*, 642 F. App'x at 303 (citation omitted). A bankruptcy court may also impose sanctions when the court finds that (1) the conduct of a party multiplied the proceedings; and (2) the conduct was both unreasonable and vexatious. See 28 U.S.C. § 1927; *Travelers Ins. v. St. Jude Hosp.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994).

94.    The conduct of the Schreiber Parties and their counsel in the Charging Lien and Fee Forfeiture Litigation is in direct violation of the Plan and Confirmation Order and is in bad faith. The Schreiber Parties and their counsel are admittedly aware of the Confirmation Order and its discharge and revesting provisions. Despite this fact, they continue to violate those provisions while making false or misleading assertions to this Court that they are not pursuing claims against the Debtor or its property when they are doing just that.

95.    The Charging Lien and Fee Forfeiture Litigation are covered by the discharge and release provisions in the Plan and Confirmation Order, and are therefore covered by the injunction provisions of the Bankruptcy Code as well. Further, despite being given the opportunity to file proofs of claim, the Schreiber Parties failed to do so by the claim bar date. The Schreiber Parties' claims against the Debtor in the Charging Lien and Fee Forfeiture Litigation arose before the Debtor's filing a voluntary petition for bankruptcy. Therefore, the Schreiber Parties and their counsel are barred from asserting any claims against the Debtors.

96.    The Schreiber Parties did not seek any relief from the Confirmation Order and did not seek an appeal or revocation of the Confirmation Order. Any attempts by the Schreiber Parties or their counsel to collaterally attack either the Confirmation Order or the Plan in the Charging Lien and Fee Forfeiture Litigation in the EDNY must fail. *See Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992)

("[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes.").

97.     Under these facts, clear and convincing evidence supports the issuance of an Order to enforce the Confirmation Order and for civil contempt and imposition of sanctions.

## III.   CONCLUSION

For the reasons stated above, Debtor respectfully requests that this Court find the Schreiber Parties and their counsel in contempt of the Confirmation Order and Order:

(a)     the Schreiber Parties and their counsel to immediately dismiss their causes of action against the Debtor in the Charging Lien and Fee Forfeiture Litigation pending in the Eastern District of New York with prejudice;

(b)     the Schreiber Parties and their counsel to execute or deliver or to join in the execution or delivery of any and all instruments required to effect the transfer of property dealt with by the Confirmation Order and Confirmed Plan, and to perform any other act, that is necessary for the consummation of the Plan;

(c)     the Schreiber Parties and their counsel to compensate the Debtor for all costs and damages attributable to the violations of this Court's Orders by the Schreiber Parties and their counsel and also award Debtor and its counsel the reasonable costs and attorneys' fees associated with this Motion;

(d)     that the Schreiber Parties and their counsel be held in contempt of the Confirmation Order; and

(e)     award sanctions and such other and further relief to Debtor as appropriate.

Respectfully submitted,
By: /s/ *Johnie Patterson*
Johnie Patterson
SBN 15601700
WALKER & PATTERSON, P.C
4815 Dacoma
Houston, TX 77092
(713) 956-5577
jjp@walkerandpatterson.com
Attorney for Nelkin & Nelkin, P.C.

## CERTIFICATE OF CONFERENCE

I, Johnie Patterson hereby certify that I conferred with Mr. Rosenblatt, Mr. Durrschmidt and Ms. Lewisnki on July 2 and 3, 2025 by email regarding this motion. Mr. Rosenblatt informed me that his clients opposed the requested relief.

s/ *Johnie Patterson*
Johnie Patterson

## CERTIFICATE OF SERVICE

I, Johnie Patterson, hereby certify that a true and correct copy of the foregoing *Motion* was served on all parties entitled to notice pursuant to the Court's CM/ECF servicing platform on
July 3, 2025.

s/ *Johnie Patterson*
Johnie Patterson