UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| Nelkin & Nelkin, P.C., | § § | Case No. 23-34054 |
| Reorganized Debtor. | § § § § | Chapter 11 (Subchapter V) |

## DEBTOR'S BRIEF IN SUPPORT OF MOTION TO ENFORCE THE CONFIRMATION ORDER AND FOR CONTEMPT

After considering the presentation of evidence, the Debtor provides the following support for several legal issues the Court is considering:

### NATURE OF THE DEBTOR'S INTEREST

1) The bankruptcy court determines the nature of a debtor's interest in property primarily by applying state law, as property interests are created and defined by state law. See *Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. . . . Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

2) The litigation and proceeds of the settlement were and are in New York. The property results from the contingency fee agreement entered into by the parties.

3) New York law clearly delineates the Debtor's interest:

   a) ***In re City of New York*, 5 N.Y.2d 300 (1959)**:

   > Section 475, in substance, declares the common law. The origin of an attorney's lien, whether as retaining or as

1

> charging, is obscure, but in all events, irrespective of type, has been recognized and enforced by the courts from very early times (see Fourth Annual Report of N. Y. Judicial Council, 1938, p. 49; 7 C. J. S., Attorney and Client, § 210 *et seq.*; 5 Am. Jur., Attorneys at Law, § 208 et seq.). The underlying purpose at both common law and now, by statute, is to protect an attorney against the knavery of his client (*Matter of Rosentover v. Weiss*, 247 App. Div. 137, affd. 272 N.Y. 557; *Goodrich v. McDonald*, 112 N.Y. 157) and, being created by statute, does not require the giving of any notice in order to bring it into existence (*Matter of Drake v. Pierce Butler Radiator Corp.*, 202 Misc. 935) for it is generally regarded as an equitable assignment to the attorney of the fund procured by his efforts to the extent of the amount of his lien (*Matter of Herlihy*, 274 App. Div. 342).

*In re City of New York*, 5 N.Y.2d at 307.

b) ***LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462 (1995)**:

> The lien comes into existence, without notice or filing, upon commencement of the action or proceeding (see, *Matter of Heinsheimer*, 214 NY 361, 367; *Fischer-Hansen v Brooklyn Hgts. R. R. Co.*, 173 NY 492; JUDICIARY LAW § 475). *In Matter of City of New York (United States--Coblentz)* (5 NY2d 300, 307-308, cert denied sub nom. *United States v Coblentz*, 363 US 841), we stated that because a cause of action is a species of property, ***an attorney acquires a "vested property interest" in the cause of action at the signing of the retainer agreement and thus a "title to 'property and rights to property' "***. Accordingly, the charging lien does not merely give an attorney an enforceable right against the property of another, ***it gives the attorney an equitable ownership interest in the client's cause of action***. The client's property right in his own cause of action is only what remains after transfer to the attorney of the agreed upon share upon the signing of the retainer agreement (*Matter of City of New York*, supra). Similarly, in *People v Keeffe* (50 NY2d 149, 156), we noted that with ***the signing of a retainer agreement that expressly assigns a portion of the proceeds*** of a cause of action to the attorney, the attorney "acquires …

> a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client." Manifestly, then, an attorney's charging lien is something more than a mere claim against either property or proceeds; an attorney's charging lien "is a vested property right created by law and not a priority of payment" (*Matter of City of New York*, 5 NY2d 300, 306, supra).

*LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d at 467-68 (emphasis added)

c) ***Empire United Lines Co. v. Feldman*, 2025 U.S. Dist. LEXIS 45238 (E.D.N.Y. March 12, 2025)**:

> Section 475 of the New York Judiciary Law provides that an "attorney who appears for a party has a lien upon his or her client's cause of action, . . . which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come." N.Y. JUDICIARY LAW § 475.[1] "A charging lien gives the attorney an equitable ownership interest in the client's cause of action and ensures that he can collect his fee from the fund he has created and obtained on behalf of his client." *Decastro v. Kavadia*, No. 12-CV-1386, 2018 U.S. Dist. LEXIS 171149, 2018 WL 4771528, at *3 (S.D.N.Y. Oct. 3, 2018); see *Yu v. Kotobuki Rest., Inc.*, No. 17-CV-4202, 2024 U.S. Dist. LEXIS 53004, 2024 WL 1259427, at *2 (E.D.N.Y. Mar. 25, 2024). "[B]ecause a cause of action is a species of property, an attorney acquires a vested property interest in the cause of action at the signing of the retainer agreement and thus a title to property and rights to property." *LMWT Realty Corp. v. Davis Agency Inc*., 85 N.Y.2d 462, 467, 649 N.E.2d 1183, 626 N.Y.S.2d 39 (N.Y. 1995) (internal quotation marks and citation omitted).

*Empire United Lines Co. v. Feldman*, 2025 U.S. Dist. LEXIS 45238, at *6-7

---

[1] Section 475 "governs attorneys' charging liens in federal courts sitting in New York." *Khudai v. Akamai Techs.*, No. 20-CV-3686, 2023 U.S. Dist. LEXIS 195752, 2023 WL 7174616, at *3 (S.D.N.Y. Nov. 1, 2023), report and recommendation adopted, 2024 U.S. Dist. LEXIS 83912, 2024 WL 2046052 (S.D.N.Y. May 8, 2024). (*footnote 3 in original*)

d) ***In re River Center Holdings, LLC***, 394 B.R. 704 (Bankr. S.D.N.Y. 2008) (Attorney's charging lien presumptively valid and provides a vested property right created by law), citing *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462 (1995).

## BANKRUPTCY COURT JURISDICTION

4) This Court has post-confirmation jurisdiction over this matter, even though post-confirmation bankruptcy jurisdiction may be narrower. The question to be answered is – does the dispute pertain to the implementation or execution of the debtor's reorganization plan? *Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C. (In re Genon Mid-Atlantic Dev., L.L.C.)*, 42 F.4th 523, 534 (5th Cir. 2022).

   a) ***Schreiber v Nelkin & Nelkin, P.C. (In re Nelkin & Nelkin, P.C.)*, 2024 Bankr LEXIS 3099 (Bankr. S.D.Tex. Sep. 26, 2024).**

   > The contingent fees owed to Nelkin and Nelkin P.C. (the "Debtor") make up the largest asset of the Debtor's bankruptcy estate and are therefore critical to the administration of same. Determination of the amounts due by the TRC Parties to the estate will directly affect the Debtor's ability to confirm a plan of reorganization, including any distributions made to creditors of the estate. Given that the fees make up such a significant portion of the Debtor's assets, absent this Court's resolution of the Debtor's counterclaim, the Debtor will be prevented from properly administering its estate and carrying out a successful reorganization. In addition, although the TRC Parties did not file a Proof of Claim, resolution of the Debtor's compulsory counterclaim is central to the claims resolution process. The Debtor listed the Malpractice Case, which includes the Debtor's counterclaim, on its Schedule E/F. Thus, adjudication of the counterclaim will necessarily involve the allowance or disallowance of a scheduled claim, which is plainly unique — and core to — the bankruptcy.

   *Schreiber v Nelkin & Nelkin, P.C. (In re Nelkin & Nelkin, P.C.)*, 2024 Bankr LEXIS 3099, at *12-13 (Bankr. S.D.Tex. Sep. 26, 2024).

b) ***Order Confirming Debtor's Plan Of Reorganization Pursuant To 11 U.S.C. § 1191(a)***. **ECF No. 373.**

   i) "All of the Debtor's assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order." *Id.*, ¶8.

   ii) "Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims." *Id.*, ¶11.

   iii) "The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d)." *Id.*, ¶15.

   iv) "The Debtor will prosecute all claims and causes of action of the estate, including collection of its fee from the Schreibers and Two Rivers Coffee, and its claim against Texas Lawyers' Professional Insurance Agency

      pending in the Texas State District Court, Travis County." *Id.*, ¶10.3 (Confirmed Plan).

  v) "All proceeds from the claims/litigation prosecuted or settled by the Debtor shall be considered income for purposes of calculating Disposable Income." *Id.*, ¶10.4 (Confirmed Plan).

  vi) "The Debtor shall collect all amounts due and owing to it, by utilizing any available means." *Id.*, ¶10.5 (Confirmed Plan).

  vii) "All claims and causes of action against Two Rivers Coffee, Steven Schreiber, Eugene Schreiber, its claim against Texas Lawyers' Professional insurance Agency pending in the Texas State District Court, Travis County and its claims against all other persons or entities, including claims under Chapter 5 of the Bankruptcy Code are specifically reserved and shall be prosecuted or settled by the Reorganized Debtor." *Id.*, ¶10.6 (Confirmed Plan).

c) Post-confirmation jurisdiction has been clearly determined to include instances where the bankruptcy court is asked to enforce its orders [including the confirmation order], block alleged violations of the debtor's bankruptcy-law rights and resolve disputes over the meaning of provisions contained in a confirmed plan. *Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C. (In re Genon Mid-Atlantic Dev., L.L.C.)*, 42 F.4th 523, 535 (5th Cir. 2022), citing *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 322-23 (5th Cir. 2016); *U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 305 (5th Cir. 2002).

d) Likewise, this case is easy. The Debtor has asked this Court to (1) enforce its Confirmation Order by requiring the delivery of property determined to be property of the estate as of the petition and now free and clear of all claims,

6

(2) block continued violations of the discharge injunction, and (3) potentially interpret provisions of the Debtor's confirmed plan.

### SETOFF/RECOUPMENT

5) Under the Bankruptcy Code, specifically 11 U.S.C. § 553, a party must be a creditor to assert a setoff. Section 553(a) explicitly states that the Bankruptcy Code does not affect "any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case". 11 U.S.C. § 553. This provision establishes that the right to setoff is limited to creditors who meet the statutory requirements. See *IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 334 (5th Cir. 2001), citing *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987).

6) The Schreibers have consistently asserted and admitted that they are not creditors of the Debtor. Setoff is therefore not available, offensively or defensively.

7) "Recoupment is 'a defense that goes to the foundation of [a] plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction.'" *DDR Weinert, Ltd. v Ovintiv USA, Inc.*, 2025 U.S. App. LEXIS 4603, at *5 (5th Cir Feb. 27, 2025) "Courts have distilled this into 'two general requirements for recoupment: (1) some type of overpayment must have been made, and (2) both the creditor's claim and the amount owed the debtor must arise from a single transaction.'" *Id.*; *Kosadnar v Metro. Life Ins. Co. (In re Kosadnar)*, 157 F3d 1011, 1014 (5th Cir 1998).

8) The Schreiber Parties argument that they are pursuing a defensive claim for recoupment in the EDNY is incorrect because they cannot satisfy either of the Fifth Circuit's requirements for recoupment.  First, the Schreiber Parties have not made an overpayment to N&N. It is undisputed that they have made no payment to N&N, let alone an overpayment. In fact, they admit they "are not claiming any

7

interest in any property claimed to be owned by the Debtor." ECF No. 403 ¶ 20. Second, they admit that they are not creditors of N&N and that they have no claim against N&N or its property. *Id*.; see also, ECF No. 403 ¶ 12. Third, they admit that there is no debt that N&N owes them. *See e.g.* ECF No. 403 ¶¶ 12, 20, 22. In light of these admitted facts, there is no single transaction that could support recoupment. The Schreiber Parties are not asserting any recoupment claim defensively. Rather, they are asserting this claim offensively. The only thing pending in the EDNY is the Schreiber Parties' motion to vacate N&N's charging lien and forfeit its fee which they continue to pursue in violation of this Court's Orders.

**AFFIRMATIVE CLAIMS**

9) "The Supreme Court has explained that Congress intended 'to adopt the broadest available definition of 'claim.'" *In re Egleston*, 448 F.3d 803, 812 (5th Cir. 2006) (quoting *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991)). Thus, "a 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets." *Browning v. MCI, Inc. (In re WorldCom, Inc.)*, 546 F.3d 211, 216 (2d. Cir. 2008). This is clearly the case here where the Schreiber Parties seek to forfeit N&N's earned fee which has been held to be an asset of N&N's bankruptcy estate by this Court. *Schreiber v Nelkin & Nelkin, P.C. (In re Nelkin & Nelkin, P.C.)*, 2024 Bankr LEXIS 3099, at *12 (Bankr. S.D.Tex. Sep. 26, 2024).

10) The Schreibers seek to prove misconduct of the debtor with a remedy of forfeiture of a fee, a fee which is currently an asset of the Debtor. That is a "claim" which must have been asserted in the bankruptcy case but was not for no other reason but forum shopping.

11) Section 102(2) of the Bankruptcy Code provides a rule of statutory construction that a "'claim against the debtor' includes [a]claim against property

8

of the debtor." 11 U.S.C. § 102(2). Pursuant to Section 102(2) a claim against property of the debtor is a "claim against the debtor" even absent a "right to payment" from the debtor. 2 COLLIER ON BANKRUPTCY P 102.03 (16th 2025). The charging lien which the Schreiber Parties seek to forfeit is the vested property of N&N. *In re River Ctr. Holdings, LLC*, 394 B.R. at 718. Thus, to the extent the Schreiber Parties attempt to assert that they are not creditors because they are not seeking a payment, they are incorrect. To the extent the Schreiber Parties argue they are not pursuing an "affirmative claim" this is also both factually and legally incorrect.

**CONCLUSION**

12) Because of the ongoing violations of the Schreiber Parties and their counsel, the Debtor and its attorneys are unable to carry out the Court's directive. By continuing to pursue litigation in the EDNY seeking to vacate the Debtor's charging lien and forfeit the Debtor's fee which would claw back assets currently deemed to be the vested property of the Debtor, the Schreiber Parties and their counsel are interfering with the Debtor's efforts to comply with the Court's Confirmation Order. As long as the Schreiber Parties and their counsel continue to pursue such litigation in violation of the Discharge Injunction and the Confirmation Order, the Debtor is unable to obtain possession of the assets encompassed by its charging lien because the Schreiber Parties and Mr. Rosenblatt take the position that those assets are to remain in the EDNY registry and in the possession of Frankfurt Kurnit until the conclusion of the EDNY Litigation, and they refuse to conclude it despite the discharge and revesting provisions of the Confirmation Order.

Respectfully submitted,

By: /s/ *Johnie Patterson*
Johnie Patterson
SBN 15601700
WALKER & PATTERSON, P.C
4815 Dacoma
Houston, TX 77092
(713) 956-5577
jjp@walkerandpatterson.com
Attorney for Nelkin & Nelkin, P.C.

## CERTIFICATE OF SERVICE

I, Johnie Patterson, hereby certify that a true and correct copy of the foregoing *Brief* was served on all parties entitled to notice pursuant to the Court's CM/ECF servicing platform on July 25, 2025.

s/ *Johnie Patterson*
Johnie Patterson