United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 01, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-34054** |
| **NELKIN & NELKIN P.C.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |
| | § | |

## <u>MEMORANDUM OPINION</u>

In this subchapter V post-confirmation proceeding, Nelkin & Nelkin, P.C has requested this Court to enforce its confirmation order and to hold Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and their Counsel, Mr. Raphael Rosenblatt in civil contempt because of their alleged intentional and deliberate attempt to circumvent the discharge and revesting provisions of the plan, confirmation order and applicable statutes of Title 11 of the United States Bankruptcy Code.

On July 22, 2025, the Court held a hearing and for the reasons stated herein, finds that Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt are in civil contempt of this Court's confirmation order entered on February 14, 2025 at ECF No. 373 by violating the discharge injunction entered in this case. The Court further finds that in order to purge themselves of the civil contempt, each of Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate) Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt must, on or before **Thursday, October 16, 2025,** seek dismissal of their causes of action against Nelkin & Nelkin, P.C. in the case styled as *Scheiber, et al. v. Friedman, et al*., Cause No. 15-cv-06861, pending in the Eastern District of New York with prejudice. Until such time as Steven Schreiber (Individually and as

purported representative of Eugene Schreiber's Estate) Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt are not in compliance with the Court's accompanying Order, then effective **Friday, October 17, 2025** and every day thereafter, each of Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt shall be jointly and severally liable for daily sanctions of $100 for each day they remain out of compliance. Finally, the Court finds that Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt, jointly and severally, must pay the reasonable attorney fees and costs incurred by Nelkin & Nelkin, P.C in prosecuting this instant motion for contempt to Walker & Patterson, P.C., subject to objections as permitted in this Court's accompanying Order.

## I.    FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

## A. Background

1. On May 6, 2025 Steven Schreiber and Eugene Schreiber (collectively, "*Schreibers*") entered into a fee agreement with Nelkin & Nelkin, P.C. ("*Debtor*" or "*Nelkin*") where Nelkin undertook the legal representation of the Schreibers, individually and on behalf of Two Rivers Coffee, LLC on a contingency fee basis (the "*Fee Agreement*").[1]

---

[1] ECF No. 400-7.

2. On December 2, 2015, Nelkin commenced *Schreiber, et al. v. Friedman, et al.*, Cause No. 15-cv-06861, District Court, Eastern District of New York ("*EDNY Litigation Case*").[2]

3. A settlement agreement was signed by all parties in the EDNY Litigation Case including the Schreibers on August 10, 2018, and became binding on the parties on August 13, 2018 (the "*Settlement Agreement*").[3]

4. On August 13, 2018, Eugene Schreiber filed a letter to Magistrate Judge James Orenstein stating: "Without wishing to disturb or delay your approval of the settlement, I am writing because the Nelkin & Nelkin firm is demanding what I believe are unjust fees and a payment schedule from Steven, me and Two Rivers that does not seem fair."[4]

5. On August 15, 2018, Debtor filed a "Notice of Charging Lien" in the EDNY Litigation Case (the "*Charging Lien*").[5] The value of the Charging Lien is estimated by Nelkin to be approximately $12,750,000.00 plus prejudgment interest and fees and expenses.[6]

6. On August 15, 2018, Schreibers, through counsel, sent a letter to Judge James Orenstein requesting that the "the Court schedule a pre-motion conference, to take place as soon as possible, in connection with a motion by Two Rivers and the Schreibers for a declaratory judgment that they do not owe Nelkin what Nelkin is demanding," and filed the notice of Nelkin's Charging Lien as an exhibit.[7]

7. On December 21, 2018, Schreibers and Nelkin, through their respective counsel, entered into an agreement in which funds were deposited into the United States District Court of the Eastern District of New York ("*EDNY*") court registry (the "*Settlement Proceeds*") due to a dispute between Nelkin and the Schreibers regarding attorney fees.[8] The Settlement Proceeds constitute a portion of the settlement benefits that was obtained by virtue of the Settlement Agreement.[9]

8. On March 7, 2019, Steven Schreiber (Individually and As Purported Representative of Eugene Schreiber's Estate) and Two Rivers Coffee, LLC (collectively, "*TRC Parties*") filed a motion, through their counsel, Rapheal Rosenblatt ("*Mr. Rosenblatt*") requesting Magistrate Judge James Orenstein of the United States District Court of the Eastern District of New York ("*EDNY*") to find that Nelkin was discharged for cause, to vacate Debtor's Charging Lien and to forfeit Nelkin's entitlement to fees under the Fee Agreement (the "*Fee Recovery Litigation*").[10]

---

[2] ECF Nos. 400 at ¶2; 403 at ¶2.
[3] ECF Nos. 400 at 5; 403 at ¶¶ 4–5; 404 at 2;  Adv. Pro. 24-3061, ECF Nos. 83 at ¶¶ 231, 233, 240; 76 at ¶¶ 231, 233, 240.
[4] ECF No. 400-1.
[5] ECF No. 405-4.
[6] ECF No. 24 at 7, ₽ 74.
[7] ECF No. 400-3.
[8] ECF Nos. 400 at 6; 404 at 2; 403 at ¶ 9.
[9] ECF Nos. 400 at 6; 404 at 2; 403 at ¶ 9.
[10] ECF No. 400-5.

9.  On August 25, 2023, (the "*Petition Date*") Debtor filed for bankruptcy protection under subchapter V of chapter 11 of the Bankruptcy Code[11] initiating the bankruptcy case. [12]

10. On August 28, 2023, this Court set December 26, 2023, as the last day to submit Proofs of Claims for non-governmental units.[13]

11. On September 1, 2023, TRC Parties were provided notice of the Bar Date.[14]

12. On September 7, 2023, TRC Parties entered their notice of appearance.[15]

13. On September 18, 2023, the Debtor filed a series of documents required by this Court including Schedule A/B: Assets--Real and Personal Property (Official Form 206A/B); Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D); Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F); Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G); Schedule H: Codebtors (Official Form 206H), and a Summary of Assets and Liabilities for Non-Individuals (Official Form 206-Summary).[16]

14. On January 19, 2025, Debtor filed a plan of reorganization (the "*Plan*").[17]

15. On February 14, 2025, the Court confirmed the Plan (the "*Confirmation Order*").[18]

16. On February 17, 2025, Mr. Rosenblatt, as counsel for the TRC Parties, wrote to Magistrate judge Cheryl Pollak and advised that the Confirmation Order had been entered and that and as a result, the TRC Parties could continue litigating the Fee Recovery Litigation against the Debtor, representing that: "[a]s this relates to the pending Motion to Transfer Venue [Docket Entry No 742] filed by the Nelkins, a determination of whether any fees are due and owing to the Nelkins was not a condition precedent to confirmation of the Bankruptcy Plan. Now that the Plan has been confirmed, the only issue remaining before this Court is the pending fee dispute that can proceed without regard to the Texas proceeding, which have now confirmed a Plan" (the "*Letter*").[19]

17. On March 3, 2025, the Plan became effective (the "*Effective Date*").[20]

18. On July 3, 2025, Debtor filed the instant "Debtor's Emergency Motion To Enforce The Confirmation Order and To Hold Steven Schreiber (Individually and As Purported

---

[11] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

[12] ECF No. 1.

[13] ECF No. 5.

[14] ECF No. 8.

[15] ECF No. 11.

[16] ECF No. 24.

[17] ECF No. 337.

[18] ECF No. 373.

[19] ECF No. 405-6.

[20] ECF Nos. 379; 373 at 25.

Representative Of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Their Counsel, Raphael Rosenblatt" (the "*Motion to Enforce*"). [21]

19. On July 17, 2025, the TRC Parties filed "Response To Emergency Motion To Enforce Confirmation Order For Finding Of Contempt" (the "*Response*").[22]

20. On July 17, 2025, the TRC Parties filed their "Brief In Support Of The Two Rivers Parties Response To Debtor's Emergency Motion To Enforce Confirmation Order And For Civil Contempt" (the "*Pre-hearing Brief*"). [23]

21. On July 22, 2025, the Court held a hearing on the Motion to Enforce.[24]

22. On July 25, 2025, Debtor filed "Debtor's Brief In Support Of Motion To Enforce The Confirmation Order And For Contempt" ("*Debtor's Brief*"). [25]

23. On August 1, 2025, the TRC Parties filed their "Post Hearing Brief In Support Of The Two Rivers Parties Response To Debtor's Emergency Motion To Enforce Confirmation Order And For Civil Contempt" (the "*Post-hearing Brief*").[26]

## II.    CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[27] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[28] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O) this proceeding contains core matters, as it primarily involves matters concerning the administration of the estate.[29]

---

[21] ECF No. 400.
[22] ECF No. 403.
[23] ECF No. 404.
[24] July 22, 2025 Min. Entry.
[25] Bankr. ECF No. 407.
[26] ECF No. 408.
[27] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[28] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[29] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

After a chapter 11 plan is confirmed, bankruptcy jurisdiction is limited to matters "pertaining to the implementation or execution of the plan."[30] The debtor's estate ceases to exist post-confirmation, except for matters directly related to the plan's implementation or execution.[31] Post-confirmation jurisdiction includes resolving amounts owed on proofs of claim, administrative claims, preference and fraudulent transfer claims, and attorneys' fees.[32] Bankruptcy courts retain jurisdiction to interpret and enforce their own prior orders.[33] Matters that "impact compliance with or completion of the reorganization plan" fall within post-confirmation jurisdiction.[34] This matter pertains to claims arising prepetition, violations of Debtor's discharge rights, and compliance with this Court's Confirmation Order.[35] Post-confirmation jurisdiction has been clearly determined to include instances where the bankruptcy court is asked to enforce its orders, block alleged violations of the debtor's bankruptcy-law rights and resolve disputes over the meaning of provisions contained in a confirmed plan.[36] Thus, this Court has post-confirmation jurisdiction in this matter.[37]

This Court may only hear a case in which venue is proper.[38] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's main bankruptcy case is pending in this Court and therefore, venue of this proceeding is proper.[39]

---

[30] *Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 589 (5th Cir. 2008); *RDNJ Trowbridge v. Chesapeake Energy Corp.* (*In re Chesapeake Energy Corp.*), 70 F.4th 273, 281 (5th Cir. 2023).

[31] *Newby v. Enron Corp.* (*In re Enron Corp. Sec.*), 535 F.3d 325, 335 (5th Cir. 2008).

[32] *In re Chesapeake Energy Corp.*, 70 F.4th at 281.

[33] *Baker v. Baker* (*In re Baker*), 593 F. App'x 416, 417 (5th Cir. 2015); *Travelers Casualty & Surety Co. of America v. Bailey*, 557 U.S. 137, 151 (2009).

[34] *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 589.

[35] *See* ECF Nos. 400; 373.

[36] *Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C.* (*In re Genon Mid-Atlantic Dev., L.L.C.*), 42 F.4th 523, 535 (5th Cir. 2022) (citing *Galaz v. Katona* (*In re Galaz*), 841 F.3d 316, 322-23 (5th Cir. 2016); *U.S. Brass Corp. v. Travelers Ins. Grp.* (*In re U.S. Brass Corp.*), 301 F.3d 296, 305 (5th Cir. 2002).

[37] *See In re Enron Corp. Sec.*, 535 F.3d at 335 (finding that a bankruptcy court does not lose jurisdiction over "pre-confirmation claims based on pre-confirmation activities").

[38] 28 U.S.C. § 1408.

[39] ECF No. 1.

## B.  Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[40] The matter pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(L) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order or judgment here.[41]

### III.   ANALYSIS

## A.   Standard and burden of proof

In the Fifth Circuit, the burden of proof in a motion for civil contempt lies with the movant, here the Debtor.[42] The Debtor must establish the elements of civil contempt by clear and convincing evidence.[43] Clear and convincing evidence requires weight of proof which creates in the "mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case.[44] "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order."[45]

---

[40] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[41] *See, e.g., Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[42] *NLRB v. Concordia Elec. Coop.*, No. 95-60404, 1999 U.S. App. LEXIS 41513, at *15 (5th Cir. Nov. 9, 1999).

[43] *Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 454 (5th Cir. 2015).

[44] *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004).

[45] *Waste Mgmt. of Wash. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015).

Specifically, the movant must demonstrate that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order.[46] Once the movant meets this burden, the burden shifts to the alleged contemnor to defend against a civil contempt finding by rebutting the conclusion, demonstrating an inability to comply, asserting good faith in its attempts to comply, showing mitigating circumstances or substantial compliance, or justifying the noncompliance.[47] "Substantial compliance is an absolute defense to civil contempt."[48] A finding of civil contempt is within the discretion of the trial court.[49] A court may award costs and attorney's fees if it finds the respondent in contempt of a court order.[50]

Additionally, the Supreme Court held that "a court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct."[51] "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[52] The "no fair ground of doubt" standard is met when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."[53]

**B.  Whether the Confirmation Order was in effect and required certain conduct by TRC Parties**

On February 14, 2025, the Court issued its Confirmation Order, confirming the Debtor's Plan.[54] Section 12.1 of the confirmed Plan contains the following provision: "[o]n the Effective

---

[46]  *Oaks of Mid City Resident Council v. Sebelius*, 723 F.3d 581, 585 (5th Cir. 2013).
[47] *Carter v. Local*, 556, 138 F.4th 164, 207 (5th Cir. 2025).
[48] *M.D. by Stukenberg v. Abbott*, 119 F.4th 373, 384 (5th Cir. 2024).
[49] *NLRB v. Concordia Elec. Coop.*, No. 95-60404, 1999 U.S. App. LEXIS 41513, at *18 (5th Cir. Nov. 9, 1999).
[50] *Chemical Company v. Chemical Cleaning. Inc.*, 434 F.2d 1212, 1215 (5th Cir. 1970).
[51] *Taggart v. Lorenzen*, 587 U.S. 554, 556 (2019).
[52] *Id.* at 560.
[53] *Id.*
[54] ECF No. 373.

Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan pursuant to § 1141(d)(1)(A) of the Code."[55] Section 1141(d)(1)(A) provides that confirmation of a chapter 11 plan discharges the debtor from any debt that arose before the date of confirmation, except as otherwise provided in the plan or the confirmation order.[56] Paragraph 6 of the Confirmation Order makes clear that the Plan does not restrict the discharge granted under 1141(d)(1)(A), stating that:

> [t]he provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on: (a) the Debtor(s); (b) all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan.[57]

The Court must determine whether the TRC Parties and Mr. Rosenblatt are bound by the terms of the Plan and Confirmation Order given that they had actual knowledge of the bankruptcy proceeding but chose not to file a proofs of claim in the case.[58] A debtor's listing of a liability in its bankruptcy schedules serves as prima facie evidence of that claim's validity and amount in a chapter 11 case.[59] If no objection is filed, the claim is automatically deemed allowed—unless the debtor scheduled the claim as disputed, contingent, or unliquidated.[60] Federal Rule of Bankruptcy Procedure 3003(c)(2) requires creditors holding unscheduled claims as well as those listed as disputed, contingent, or unliquidated, to file a proof of claim. On its Schedule E/F: "Creditors Who Have Unsecured Claims", the Debtor specifically listed Steven Schreiber, Eugene Schreiber and

---

[55] ECF No. 373 at 27.
[56] 11 U.S.C. § 1141(d)(1)(A).
[57] ECF No. 373 at 4–5.
[58] ECF Nos. 123 at 2, 120-4, 120-7.
[59] FED. R. BANKR. P. 3003(b)(1).
[60] FED. R. BANKR. P. 3003(b)(1); *Tex. Gen. Land Office v. Pearl Res. LLC* (*In re Pearl Res. LLC*), 643 B.R. 436, 463 (Bankr. S.D. Tex. 2022).

Two Rivers Coffee, LLC as creditors who had pre-petition litigation claims against the Debtor and listed these as disputed.[61] Therefore, the TRC Parties were required to file proofs of claim in order to vote on the Debtor's Plan, preserve their claims, and receive distributions from the bankruptcy estate.[62]

However, nothing in the Bankruptcy Code requires that a party file a proof of claim to be bound by the effects of a confirmed plan. Instead, § 1141(a) provides that "[e]xcept as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind . . . any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." A debtor has the obligation to list and schedule a creditor, and failure to do so will mean that those claims will be exempt from discharge "unless such creditor had notice or actual knowledge of the case in time for such timely filing."[63] Creditors with actual, timely notice of the bankruptcy proceeding will have their claims discharged if they fail to timely file a proof of claim.[64] Thus, as long as a creditor has adequate notice of the bankruptcy proceeding, it need not file a proof of claim to be bound by a confirmed plan.[65] The TRC Parties and Mr. Rosenblat certainly had actual knowledge of the bankruptcy case with ample time to protect their rights, given that they knew about the case from the outset and admittedly monitored the docket throughout the proceedings.[66] The Court thus finds that the TRC Parties and

---

[61] Bankr. ECF No. 24 at 12-15.

[62] *See In re M & C P'ship*, No. 19-11529, 2021 Bankr. LEXIS 3702, at *14 (Bankr. E.D. La. Mar. 15, 2021).

[63] 11 U.S.C. § 523(a)(3)(a) & (b).

[64] *Raymond James & Assocs. v. Jalbert* (*In re German Pellets La., L.L.C.*), 91 F.4th 802, 809 (5th Cir. 2024) ("If an interested party has 'notice or actual knowledge' of the bankruptcy, that party must 'come forward and protect their enhanced rights . . . or else lose their rights through the sweeping discharge of Chapter 11.'").

[65] *In re M & C P'ship*, No. 19-11529, 2021 Bankr. LEXIS 3702, at *14 (Bankr. E.D. La. Mar. 15, 2021); *In re Schepps Food Stores*, 152 B.R. 136, 141 (Bankr. S.D. Tex. 1993); *In re Franklin*, 448 B.R. 744. 747 (Bankr. M.D. La. 2011).

[66] *See* Adv. Pro. 24-03061, ECF Nos. 123 at 2, 8; 120-4. *See e.g.,* ECF Nos. 16, 56, 222.

Mr. Rosenblatt, as their counsel, are bound by the terms of the Plan and Confirmation Order regardless of the fact that the TRC Parties intentionally chose not to file proofs of claim.[67]

Moreover, pursuant to § 502(b)(9), and the applicable rules, a creditor in the Fifth Circuit who has received notice of a bankruptcy case but fails to file a timely proof of claim is generally barred from sharing in distributions under the plan and from asserting a claim or claims against the reorganized debtor.[68] Section 502(b)(9) explicitly disallows claims that are not timely filed, except under specific exceptions provided in 11 U.S.C § 726 or the Federal Rules of Bankruptcy Procedure.[69] Fifth Circuit case law supports this principle. For example, in *In re Franklin*,[70] the court held that a creditor who failed to file a timely proof of claim was not entitled to relief under § 502 and could not use its equitable powers to allow the claim.[71] The creditor was bound by the confirmed plan and could not assert its claim against the reorganized debtor, as it had notice of the case and failed to act within the required timeframe.[72] Similarly, in *In re M & C P'ship*,[73] the court emphasized that a creditor who does not file a timely proof of claim when required is barred from participating in plan voting, receiving distributions, and asserting claims against the reorganized debtor.[74] Additionally, the Federal Rules of Bankruptcy Procedure, such as 3003, establish strict deadlines for filing proofs of claim, and failure to comply with these deadlines generally results in the claim being disallowed.[75] This procedural requirement ensures that the debtor and other

---

[67] *See e.g.,* ECF Nos. 83 at 2; 317 at 5, ¶ 7; Adv. Pro. 24-03061, ECF No. 120-7.

[68] 11 U.S.C. § 502(b)(9).

[69] 11 U.S.C. § 502(b)(9).

[70] 448 B.R. 744 (Bankr. M.D. La. 2011).

[71] *Id.* at 748.

[72] *Id.* at 747.

[73] No. 19-11529, 2021 Bankr. LEXIS 3702 (Bankr. E.D. La. Mar. 15, 2021).

[74] *Id.* at *14 ("If a scheduled creditor does not file a timely proof of claim when it is required to do so, that creditor is in the worst of all worlds: it cannot participate in plan voting, will receive no distributions under the plan, and will have its claim discharged, should the debtor receive a discharge.").

[75] 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(3).

creditors can rely on the finality of the claims process.[76] Courts routinely hold that a creditor who intentionally fails to file a proof of claim is barred from later asserting a pre-petition claim against the debtor post-confirmation, and the claim is discharged.[77] The TRC Parties and Mr. Rosenblatt, as their counsel, have repeatedly conceded throughout this bankruptcy case that the TRC Parties did not file proofs of claim and the record confirms that they in fact did not.[78] As such, the TRC Parties and Mr. Rosenblatt are required to comply with the discharge under 11 U.S.C. §§ 1191(a) and 1141(d) and are enjoined by the plain language of the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2).

Section 524(a) governs the effect of the discharge granted under § 1141(d): "A discharge . . . operates as injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."[79]

Accordingly, pre-petition claims that seek to establish personal liability against the Debtor were discharged pursuant to U.S.C. §§ 1191(a) and 1141(d) and the TRC Parties and Mr. Rosenblatt are enjoined from asserting such claims by the plain language of the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2).

**C.  Whether the TRC Parties and Mr. Rosenblatt failed to comply with this Court's Confirmation Order and have knowingly and deliberately violated the discharge provisions of the Confirmation Order by continuing to pursue claims against the Debtor in the Fee Recovery Litigation and subject to civil contempt**

---

[76] *In re Franklin*, 448 B.R. at 748; *Cast Settlement Corp. v. Tran* (*In re Tran*), 369 B.R. 312, 318 (S.D. Tex. 2007).
[77] 11 U.S.C. § 1191(a); 11 U.S.C. § 1141(d). *See, e.g. Vanguard Operating, LLC v. Sublette Cty. Treasurer* (*In re Vanguard Nat. Res., LLC*), Nos. 17-30560, 18-3244, 18-3245, 18-3246, 18-3247, 18-3248, 18-3249, 18-3250, 2020 Bankr. LEXIS 83, at *79 (Bankr. S.D. Tex. Jan. 14, 2020) ("'The discharge is thus pervasive'—a claim is discharged under § 1141(d)(1)(A) 'whether or not a proof of claim is filed, the claim is allowed, or the holder of the claim has accepted the plan.'"); *Otto v. Texas Tamale Co.* (*In re Texas Tamale Co.*), 219 B.R. 732, 737 (Bankr. S.D. Tex. 1998) (finding that adversary action was an attempt to file a late claim against the estate and was thus discharged under the confirmed plan); *In re United Ref. Co.*, No. 83-03935, 2021 Bankr. LEXIS 105, at *3 (Bankr. S.D. Tex. Jan. 16, 2021).
[78] *See e.g.,* ECF Nos. 83 at 2; 317 at 5, ¶ 7; Adv. Pro. 24-03061, ECF No. 120-7.
[79] 11 U.S.C. § 524(a)(2).

Nelkin asserts that the Settlement Proceeds and its Charging Lien are property of its bankruptcy estate that vested into Nelkin free and clear of any liens, and that the Fee Recovery Litigation is a pre-petition claim by the TRC Parties against Nelkin that was discharged by the Confirmation Order.[80]

Contrarily, the TRC Parties' and Mr. Rosenblat's principal argument is that they are not pursuing an affirmative claim against Nelkin because, since there has not been a court order in the Fee Recovery Litigation permitting Nelkin to collect any fees, only the TRC Parties, not Nelkin, have ownership rights over the Settlement Proceeds, and therefore, the Charging Lien is a claim by Nelkin against the TRC Parties to recover from the TRC Parties' Settlement Proceeds to augment Nelkin's bankruptcy estate.[81] Put another way, the TRC Parties assert that because the only claim at issue is one brought by Nelkin against the TRC Parties, they are merely defending against a claim by Nelkin and have a right to do so notwithstanding the Confirmation Order.[82]

The TRC Parties offer additional arguments that they have not violated the Confirmation Order, including that: (1) Nelkin is judicially estopped from asserting that the Confirmation Order enjoined the TRC Parties from prosecuting the Fee Recovery Litigation post-confirmation; (2) any potential claim asserted by TRC Parties is in *in rem* in nature and therefore not discharged by the Confirmation Order; (3) there was a pre-confirmation agreement between Nelkin and TRC Parties allowing TRC Parties to pursue the Fee Recovery Litigation post-confirmation; (4) the Settlement Proceeds are held in *legis custodia* by the EDNY and therefore, the Settlement Proceeds cannot be property of Nelkin's bankruptcy estate and only a judge in the EDNY can determine who has rights to the Settlement Proceeds; and (5) the Fee Recovery Litigation is a claim for setoff or recoupment

---

[80] ECF No. 400.
[81] ECF Nos. 404; 408.
[82] ECF No. 408 at 7.

that survives discharge, regardless of whether the TRC Parties filed proofs of claim.[83] The Court

will address each of the parties' arguments.

### a.   Whether Debtor's Charging Lien and Settlement Proceeds are property of Debtor

On its Schedule A/B in the "All other assets" section, Nelkin specifically listed the

Charging Lien as an asset and estimated its value to be in excess $12,750,000.00.[84] The TRC

Parties assert that none of the Settlement Proceeds subject to the Charging Lien was property of

Nelkin's bankruptcy estate.[85] TRC Parties assert that since the Settlement Proceeds are deposited

in the registry of the EDNY, they are held in *custodia legis* and therefore, they were never property

of Nelkin's bankruptcy estate and only a judge in the EDNY may determine the rights of the parties

with respect to the Settlement Proceeds and Charging Lien.[86] The TRC Parties also point to New

York case law which have characterized a charging lien as "a security interest in the favorable

result of litigation, giving the attorney equitable ownership in the client's cause of action," to argue

that Nelkin has no more than an inchoate property interest in the Charging Lien.[87]

The TRC Parties rely on *In re Purifiner Distrib.*[88] and *Davis*[89] for the proposition that

"[p]roperty held by a Court in *custodia legis* does not become property of a bankruptcy estate."[90]

These cases are inapplicable here. The court in *In re Purifiner Distrib.* analyzed whether a debtor

had a property interest in a supersedeas bond.[91] *Davis* involved a determination of the debtor's

property interest under Maine law in certain funds held in escrow pending the division of marital

---

[83] ECF No. 408.
[84] ECF No. 24 at 7, ₱ 74.
[85] ECF No. 408 at 9, 10.
[86] ECF No. 408 at 7–12.
[87] ECF No. 408 at 8.
[88] 188 B.R. 1007 (Bankr. M.D. Fla. 1991).
[89] 356 F. 3d 76 (1st Cir. 2004).
[90] ECF No. 408 at 12.
[91] *In re Purifiner Distribution Corp.*, 188 B.R. 1007, 1011 (Bankr. M.D. Fla. 1995).

assets.[92]  Neither case says anything about an attorney charging lien under New York law, which is at issue here. The TRC Parties are correct that "[p]roperty in *custodia legis* is held in possession of a court on behalf of the court . . . until it issues orders administering the property."[93] However, this does not prevent this Court from determining Nelkin's property interest in the Settlement Proceeds because Nelkin still cannot receive any of the Settlement Proceeds until it obtains an order from the EDNY disbursing the Settlement Proceeds to it since the Settlement Proceeds are in custody of the EDNY.[94] Thus, although this Court does not have jurisdiction to enter an order disbursing the Settlement Proceeds, this Court, as explained *supra*, has post-confirmation jurisdiction to determine the property rights of Nelkin in the Settlement Proceeds and interpret its own Confirmation Order.[95]

Accordingly, whether the Settlement Proceeds are held in *custodia legis* does not prevent this Court from making a determination of Nelkin's property interest in the Settlement Proceeds. Thus, the Court will now determine the parties' interest in the Settlement Proceeds.

A bankruptcy court determines the nature of a debtor's interest in property primarily by applying state law, as property interests are created and defined by state law.[96] The Settlement Proceeds are in the court registry of the EDNY and the Charging Lien was created under New York Law.[97] The Settlement Proceeds were created by virtue of a settlement of the EDNY

---

[92] *Davis v. Cox*, 356 F.3d 76, 93 (1st Cir. 2004).
[93] *Ebert v. Blackmax Downhole Tools* (*In re Gibraltar Res.*), 197 B.R. 246, 253 (Bankr. N.D. Tex. 1996).
[94] *Id. Commonwealth*, 297 U.S. at 619.
[95] *See supra* Section II.A.
[96] *See Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. . . . Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").
[97] ECF Nos. 400 at 6; 404 at 2.

Litigation Case in New York.[98] New York law thus delineates Nelkin's interest.[99]  Section 475 of
the New York Judiciary Law creates a charging lien in attorney fees, which states in pertinent part:

> From the commencement of an action . . . the attorney who appears for a party has a
> lien upon his client's cause of action, claim or counterclaim, which attaches to a
> verdict, report, determination, decision, judgment or final order in his client's favor .
> . . . The court upon the petition of the client or attorney may determine and enforce
> the lien.[100]

The TRC Parties are correct in that some courts have characterized a charging lien as a
"security interest."[101] However, this is not dispositive because as TRC Parties point out, the
charging lien under New York law has been described by various conflicting terms.[102] The Court
of Appeals of New York, New York's highest court, has analyzed and clarified the nature of an
attorney's charging lien in *LMWT Realty Corp. v. Davis Agency Inc.*[103] In *LMWT Realty Corp.*,
attorneys represented an insured on its action against his insurer.[104] The action was settled but the
insurer refused to issue the settlement check because a taxing authority had previously filed a lien
for unpaid property taxes against the proceeds of the insurance policy.[105] The attorneys argued that
any amount of the taxing authorities' recovery should be reduced by the amount of their charging
lien.[106] The court agreed, and affirmed their award of attorney's fees and expenses.[107] In reaching
its holding, the court spoke on the effect of a charging lien and contingency fee agreements under
New York law:

> The lien comes into existence, without notice or filing, upon commencement of the
> action or proceeding[.]  . . . [B]ecause a cause of action is a species of property, *an*

---

[98] ECF Nos. 400 at 4; 404 at 2; Adv. Pro. 24-3061, ECF No. 83 at 13.
[99] *See In re City of N.Y.*, 5 N.Y.2d 300, 306 (1959).
[100] NY CLS Jud § 475.
[101] ECF No. 408 at 8.
[102] *See Antonmarchi v. Consolidated Edison Co., of N.Y.*, 678 F. Supp. 2d 235, 240-241 (S.D. N.Y. 2010); ECF No.
408 at 8.
[103] 85 N.Y.2d 462 (1995).
[104] *Id.* at 465.
[105] *Id.*
[106] *Id.*
[107] *Id.*

*attorney acquires a "vested property interest" in the cause of action at the signing of the retainer agreement and thus a "title to 'property and rights to property'".* Accordingly, the charging lien does not merely give an attorney an enforceable right against the property of another, *it gives the attorney an equitable ownership interest in the client's cause of action.* The client's property right in his own cause of action is only what remains after transfer to the attorney of the agreed-upon share upon the signing of the retainer agreement[.] . . . [W]ith *the signing of a retainer agreement that expressly assigns a portion of the proceeds of a cause of action to the attorney*, the attorney "acquires ... a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client." Manifestly, then, *an attorney's charging lien is something more than a mere claim against either property or proceeds; an attorney's charging lien "is a vested property right created by law* and not a priority of payment."[108]

By specifically stating that a charging lien was more than a "priority of payment," the Court of Appeals of New York makes clear that a charging lien conveys more than a mere security interest, and in fact conveys property ownership of the portion of the settlement proceeds assigned to the attorney in the fee agreement "which cannot subsequently be disturbed by the client."[109]

The EDNY Litigation Case was settled pre-petition on August 13, 2018 by virtue of the Settlement Agreement.[110] The Fee Agreement provides for compensation to Nelkin for its representation of the TRC Parties in the EDNY Litigation Case that is based on one-third of the value of the total recovery the TRC Parties receive by virtue of a settlement in the EDNY Litigation Case (the "*Contingency Fee*").[111] Thus, upon settlement of the EDNY Litigation Case, Nelkin held a Charging Lien that caused its Contingency Fee portion of the Settlement Proceeds to be vested in Nelkin.[112] There has been no determination that the Charging Lien was invalid.[113] Nelkin's

---

[108] *Id.* at 467-68 (emphasis added).
[109] *See Id.* at 467.
[110] ECF Nos. 400 at 5; 403 at ¶¶ 4–5; 404 at 2; Adv. Pro. 24-3061, ECF Nos. 83 at ¶¶ 231, 233, 240; 76 at ¶¶ 231, 233, 240.
[111] ECF No. 400-7.
[112] *LMWT Realty Corp*, 85 N.Y.2d at 467–68; *In re City of New York*, 5 N.Y.2d 300, 307 (1959) (The charging lien, "being created by statute, does not require the giving of any notice in order to bring it into existence."); *Empire United Lines Co. v. Feldman*, 2025 U.S. Dist. LEXIS 45238 at * 6–7 (E.D.N.Y. March 12, 2025).
[113] *In re River Center Holdings*, LLC, 394 B.R. 704 (Bankr. S.D.N.Y. 2008) ("a charging lien is "presumptively valid").

vested interest in the Charging Lien and Settlement Proceeds became property of Nelkin's bankruptcy estate on the Petition Date.[114]

The Confirmation Order provides that the vested interest in the Charging Lien and Settlement Proceeds was transferred to Nelkin free and clear of any encumbrances:

> All of the Debtor's assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order.[115]

Section 1141(c) provides in relevant part that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . . ." Here, Nelkin's Plan dealt with the Settlement Proceeds (the property) and pursuant to 11 U.S.C. §1141(c), Nelkin's vested interest in the Settlement Proceeds is free and clear of all claims and interests of creditors, equity security holders, and of general partners in Nelkin.[116] As recognized by the Fifth Circuit, the confirmation of a Chapter 11 plan "operates to extinguish liens that are not preserved in a confirmed Chapter 11 plan" and that this is "the default rule."[117] Thus, whatever claims the TRC Parties may have had against Nelkin's vested interest in the Settlement Proceeds have been extinguished pursuant to § 1141(c). Accordingly, upon confirmation of the Plan, the Contingency Fee portion of the Settlement Proceeds vested back into the reorganized Nelkin free and clear of liens and any other encumbrances.

---

[114] 11 U.S.C. § 541(a).
[115] ECF No. 373 at 5.
[116] *See* ECF No. 373 at 15, 23.
[117] *Elixir Indus. v. City Bank & Tr. Co. (In re Ahern Enters.)*, 507 F.3d 817, 820-22 (5th Cir. 2007).

**b. The Fee Recovery Litigation**

The Fee Recovery Litigation was initiated on March 7, 2019 by a motion filed by Mr. Rosenblatt on behalf of the TRC Parties (the "*March 7, 2019 Motion*") in the EDNY Litigation Case requesting Magistrate Judge James Orenstein to make a determination in the EDNY Litigation Case that (1) Nelkin was discharged for cause as a result of their conduct in connection with their representation of TRC Parties in the EDNY Litigation Case; and (2) because Nelkin was discharged for cause, the Charging Lien is vacated and Nelkin is not entitled to any of the Settlement Proceeds whatsoever.[118] The March 7, 2019 Motion does not specify what acts or omissions by Nelkin warranted a discharge for cause.[119]   Although Magistrate Judge James Orenstein ruled on the March 7, 2019 Motion on September 16, 2020, finding that Nelkin was discharged for cause, that ruling was reversed in relevant part on March 7, 2022, and the March 7, 2019 Motion remains pending.[120]

As a matter of law, the Contingency Fee is property of Nelkin's bankruptcy estate.[121] A claim for forfeiture of legal fees based on an attorney's discharge for cause due to ethical violations is treated as a claim for disgorgement of legal fees under New York law.[122]   Thus, by seeking to recover a portion of the Settlement Proceeds from Nelkin, the TRC Parties are seeking to extract

---

[118] ECF No. 400-5.

[119] ECF No. 400-5.

[120] *Schreiber v. Friedman*, No. 15 CV 6861, 2025 U.S. Dist. LEXIS 108328, at *8 (E.D.N.Y. June 8, 2025).

[121] *See supra* Section III.C.a.

[122] *Star Auto Sales of Bayside, Inc. v. Trachtenberg*, No. 710980/2023, 2024 N.Y. Misc. LEXIS 18663, at *5 (Sup. Ct. May 6, 2024)   ("Plaintiffs' third cause of action is for disgorgement of legal fees. 'A cause of action for forfeiture of legal fees based on an attorney's discharge for cause due to ethical violations may be maintained independent of a cause of action alleging legal malpractice or breach of fiduciary duty, and does not require proof or allegations of damages.'"); *Access Point Med., LLC v. Mandell*, 2013 NY Slip Op 2208, ¶ 3, 106 A.D.3d 40, 44, 963 N.Y.S.2d 44, 47 (App. Div. 1st Dept.) ("[P]laintiffs' demand for the return of attorneys' fees they paid to defendants is, essentially, a claim for monetary damages."); *Lumen Ltd.. v. Quazi*, *No*. 613812-21, 2023 N.Y. Misc. LEXIS 27267, at *17 (Sup. Ct. Aug. 28, 2023).

payment from Nelkin. A claim is defined in the bankruptcy code as a "right to payment."[123] As such, the Fee Recovery Litigation is a claim against Nelkin.

The TRC Parties assert that even if the Fee Recovery Litigation is a claim against Nelkin, it is not subject to discharge because it is an *in rem* dispute.[124] Specifically, the TRC Parties assert that the Fee Recovery Litigation it is an *in rem* dispute because (1) Nelkin and the TRC Parties all assert an interest in the same Settlement Proceeds;[125] and (2) the Charging Lien did not grant Nelkin any vested property interest in the Settlement Proceeds.[126]

The TRC Parties rely on the principles in *Johnson*[127] to support their argument that they may pursue an *in rem* claim against Nelkin notwithstanding the Confirmation Order. *Johnson* involved a secured creditor who sought to enforce their liens and pursue *in rem* claims against a debtor's property after a Chapter 13 discharge.[128] This case has no application here where the TRC Parties have not demonstrated that they have a lien against any of Debtor's property and asserted they are not creditors of the Debtor.[129] Additionally, as this Court explained *supra*, this is a Chapter 11 case and therefore, whatever claims the TRC Parties may have had against Nelkin's vested interest in the Settlement Proceeds have been extinguished pursuant to § 1141(c).[130] The principles the TRC Parties cite from *In Re Johnson* are thus simply not applicable here.

---

[123] *Phillips v. Phillips* (*In re Phillips*), 175 B.R. 901, 907 (Bankr. E.D. Tex. 1994); 11 U.S.C. 101(5).
[124] ECF No. 408 at 3.
[125] ECF No. 408 at 3.
[126] ECF No. 408 at 4.
[127] 501 U.S. 78 (1991).
[128] *Johnson*, 501 U.S. at 82-83.
[129] *See Acceptance Loan Co. v. In re S. White Transp., Inc.* (*In re S. White Transp., Inc.*), 473 B.R. 695, 700 (S.D. Miss. 2012) ("The Bankruptcy Code 'allows a creditor with a loan *secured by a lien* on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.'") (emphasis added).
[130] *See supra* Section III.C.a.

Moreover, whether Nelkin and the TRC Parties both seek an interest in the Settlement Proceeds is not determinative of whether the Fee Recovery Litigation is an *in rem* proceeding.[131] "An in rem action is a proceeding or action instituted directly against a thing, an action directly taken against property, or an action that is brought to enforce a right in the thing itself."[132] "An *in personam* action, by contrast, determines a defendant's personal rights and liabilities."[133] In other words, an *in rem* proceeding is against the "property alone" and the property "itself is . . . the defendant."[134] The result of an *in rem* action "is a judgment which operates upon the property and which has no element of personal claim or personal liability."[135]

The Fee Recovery Litigation creates personal liability against Nelkin. Specifically, because the Contingency Fee portion of the Settlement Proceeds is property of Nelkin's bankruptcy estate, if the TRC Parties prevail in the Fee Recovery Litigation, which is a claim for a disgorgement of all of Nelkin's attorney fees, Nelkin would be liable to the TRC Parties up to the amount of the Contingency Fee.[136] Although the Settlement Proceeds may be used to satisfy any judgment the TRC Parties might obtain against Nelkin, the Fee Recovery Litigation is not an *in rem* claim because the Contingency Fee is Nelkin's property and the TRC Parties have not established a lien in it.[137]

---

[131] *Universal Business Computing Co. v. Comprehensive Accounting Corp.*, 539 F. Supp. 1142, 1144 (N.D.Ill. 1982) (lawsuit not an in rem proceeding merely because both parties claim a proprietary interest in a computer software design); *Commonwealth Tr. Co. v. Bradford*, 297 U.S. 613, 619, (1936) (finding that proceedings are not *in rem* when instituted only to determine rights and do not "deal with the property and order distribution").

[132] *LeBlanc v. Edwin Epstein, Jr. Operating Co.*, No. H-03-0592, 2003 U.S. Dist. LEXIS 26830, at *13-14 (S.D. Tex. Aug. 5, 2003).

[133] *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990).

[134] *Hetelekides v. Cty. of Ontario*, 2023 NY Slip Op 00803, ¶ 2, 39 N.Y.3d 222, 232, 184 N.Y.S.3d 716, 723, 205 N.E.3d 436, 443 (Feb. 14, 2023).

[135] *Id.*

[136] *Star Auto Sales of Bayside, Inc. v. Trachtenberg*, No. 710980/2023, 2024 N.Y. Misc. LEXIS 18663, at *5 (Sup. Ct. May 6, 2024); *Access Point Med., LLC v. Mandell*, 2013 NY Slip Op 2208, ¶ 3, 106 A.D.3d 40, 44, 963 N.Y.S.2d 44, 47 (App. Div. 1st Dept.).

[137] *See N. Tex. Cap. Partners, L.P. v. Dorvil* (*In re Dorvil*), 665 B.R. 35, 51 (Bankr. N.D. Tex. 2024) ("Once the stay was terminated by operation of the Discharge Order, prosecution of an action *in rem* would have been permissible. But [creditor] was not a secured creditor with a judicial lien—it was an unsecured creditor with only a judgment as

Because the Fee Recovery Litigation, if resolved in favor of the TRC Parties, would result in a judgement against Nelkin in the amount of the Contingency Fee, the Court finds that the Fee Recovery Litigation is an *in personam* claim against Nelkin. Additionally, the Fee Recovery Litigation is a pre-petition claim because it was initiated pre-petition by the March 7, 2019 Motion.[138] As explained *supra*, the TRC Parties and Mr. Rosenblatt were enjoined from continuing to pursue prepetition claims that seek to establish personal liability against Nelkin upon confirmation of the Plan pursuant to §§ 1191(a), 1141(d) and 524(a)(2).[139] Thus, the Fee Recovery Litigation was discharged pursuant to 11 U.S.C. §§ 1191(a) and 1141(d) and is enjoined from assertion by the plain language of the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2). To be clear, this Court's finding that the Fee Recovery Litigation has been discharged and that Nelkin has a vested interest in its Contingency Fee does not necessarily mean that 100% of the Settlement Proceeds is Nelkin's property. Instead, Nelkin has a vested property interest only in the Contingency Fee, whatever its value may be.[140] Notably, the value of the Contingency Fee has not yet been determined by any court and remains in dispute.[141]

Accordingly, the Fee Recovery Litigation was discharged pursuant to §§ 1191(a) and 1141(d), and the TRC Parties and Mr. Rosenblatt were enjoined from prosecuting the Fee Recovery Litigation by the plain language of the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2).

### c.  The TRC Parties' and Mr. Rosenblatt's post-discharge conduct

---

proof of claim. The gravamen of the state court action was one *in personam* . . . The trial court's judgment attached personal liability to Defendant when it entered judgment. That personal liability was extinguished by the discharge.").

[138] ECF No. 400-5.

[139] *See supra* Section III.B.

[140] ECF No. 400-7 at 2.

[141] *See* ECF No. 24 at 7, ¶ 74.

Having found that the TRC Parties and Mr. Rosenblatt were enjoined from prosecuting the Fee Recovery Litigation, the Court must now determine whether the TRC Parties and Mr. Rosenblatt violated the Plan and Confirmation Order through their post-discharge conduct. Section 524(a)(2) provides that a discharge pursuant to §1141(d) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." The discharge injunction is broad and bars any attempt to recover a discharged debt from the debtor personally.[142] Creditors have been found in violation of the discharge injunction under § 524(a)(2) when they refuse to dismiss pre-petition litigation that was discharged after receiving notice that the discharge injunction was in effect.[143]

The TRC Parties and Mr. Rosenblatt were  aware that the Confirmation Order was entered on February 14, 2025, and of the terms of the confirmed Plan.[144] Mr. Rosenblatt is counsel for the TRC Parties in the Fee Recovery Litigation.[145] Mr. Rosenblatt, on behalf on the TRC Parties, sent the February 17, 2025 Letter, informing Magistrate Judge Cheryl Pollak that this Court entered its Confirmation Order on February 14, 2025[146] and in that letter, Mr. Rosenblatt, on behalf of the TRC Parties, indicated an intent to continue prosecuting the Fee Recovery Litigation by representing that "[n]ow that the Plan has been confirmed, the only issue remaining before this Court is the pending fee dispute that can proceed without regard to the Texas proceedings, which

---

[142] *McClure v. Bank of Am.* (*In re McClure*), 420 B.R. 655, 659 (Bankr. N.D. Tex. 2009).
[143] *In re Daly*, 666 B.R. 810, 822 (Bankr. S.D. Fla. 2025) ("[T]he continuation in *any way* of an action against the Debtor to collect on a discharged debt - including the refusal to dismiss pending litigation even if that litigation is stayed - violates the discharge injunction."). *Bearden v. Jackson* (*In re Bearden*), 382 B.R. 911, 923 (Bankr. D.S.C. 2008) ("The failure to dismiss the Debtor from the state court litigation after Defendants were served with the answer which indicated that Debtor had received a discharge may be a violation of the discharge injunction.").
[144] *See also* ECF No. 317.
[145] ECF No. 405-5.
[146] ECF No. 400-6.

have now confirmed a Plan."[147] Moreover, the TRC Parties, through Mr. Rosenblatt, obtained an

order from Judge Cheryl Pollak in the EDNY on June 8, 2025 (the "*June 8, 2025 Order*") allowing

the TRC Parties to continue prosecution of the Fee Recovery Litigation, stating that:

> The Court finds that the proceedings pending in the Eastern District of New York
> do not involve any affirmative claims by the Schreibers against the Firm, nor are
> the Schreibers endeavoring to collect on any potential debt or obligation from the
> Firm that would be discharged by the confirmed Plan. . . . [T]he Schreibers have no
> affirmative claims against the Firm in either the Bankruptcy Court or this Court.[148]

The Court finds that the TRC Parties' efforts, through Mr. Rosenblatt, to prosecute the Fee

Recovery Litigation after confirmation of the Plan by obtaining the June 8, 2025 Order and

refusing to dismiss the Fee Recovery Ligation despite having knowledge of the Plan and

Confirmation Order, was a "continuation of an action . . . or an act, to collect, recover or offset any

such debt as a personal liability of Nelkin."[149]

Accordingly, the Court finds that the TRC Parties and Mr. Rosenblatt violated the

discharge provisions of the Plan and Confirmation Order pursuant to 11 U.S.C. §§ 1191(a),

1141(d) and 524(a)(2).[150] Notwithstanding the plain language of the Plan and Confirmation order,

the Court will address the TRC Parties' remaining arguments that the Fee Recovery Litigation was

not discharged by the Plan and Confirmation Order.

### d.  Order obtained in the EDNY

The Court will first address the June 8, 2025 Order the TRC Parties obtained from

Magistrate Judge Cheryl Pollak in the EDNY.[151] The Supreme Court has held that a bankruptcy

---

[147] ECF No. 405-6.

[148] *Schreiber v. Friedman*, No. 15 CV 6861, 2025 U.S. Dist. LEXIS 108328, at *31 (E.D.N.Y. June 8, 2025).

[149] 11 U.S.C. § 524(a)(2); *In re Avianca Holdings S.A.*, 648 B.R. 358, 361 (Bankr. S.D.N.Y. 2023) (failure to discontinue discharged claim was a violation of discharge injunction when creditor had notice of discharge injunction and represented an intent to continue prosecution of discharged claim.).

[150] *In re Avianca Holdings S.A.*, 648 B.R. 358, 361 (Bankr. S.D.N.Y. 2023) (failure to discontinue discharged claim was a violation of discharge injunction when creditor had notice of discharge injunction and represented an intent to continue prosecution of discharged claim.).

[151] *Friedman*, No. 15 CV 6861, 2025 U.S. Dist. LEXIS 108328, at *31.

court has jurisdiction to interpret and enforce its own prior orders.[152]  Moreover, 28 U.S.C. § 1334(e)(2)(1) provides that the bankruptcy court has exclusive jurisdiction of "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[153] Additionally, in  *Burch v. Freedom Mortg. Corp.* the Fifth Circuit reiterated that bankruptcy courts maintain jurisdiction to interpret and enforce their own prior orders, even after a bankruptcy case is closed, to ensure that the rights afforded under the Bankruptcy Code are fully vindicated.[154]

This principle aligns with the broader statutory framework under  28 USC §§ 1334 and 157 which grants district courts original and exclusive jurisdiction of bankruptcy cases and allows them to refer such matters to bankruptcy courts.[155] Courts in the Fifth Circuit have recognized that matters seeking to interpret or enforce orders issued in core proceedings, such as here, fall within the bankruptcy court's jurisdiction as core proceedings under 28 U.S.C. § 157(b)(2).[156] This reinforces the bankruptcy court's authority to handle such matters directly.

The magistrate judge's finding that the TRC Parties are not bringing any affirmative claims against Nelkin necessarily requires a determination of what is property of Nelkin's bankruptcy estate and an interpretation of this Court's Confirmation Order. Thus, the Court finds that the June 8, 2025 Order—issued after the commencement of this bankruptcy case, confirmation of the Plan and issuance of this Court's Confirmation Order, interpreting this Court's own order, including

---

[152] *Travelers Casualty & Surety Co. of America v. Bailey*, 557 U.S. 137, 151 (2009).
[153] 28 U.S.C. § 1334(e)(2)(1).
[154] *Burch v. Freedom Mortg. Corp.* (*In re Burch*), 835 F. App'x 741, 748 (5th Cir. 2021).
[155] 28 USC §§1334, 157(a).
[156] *Lee v. BDFI, LLC* (*In re Briar Bldg. Hous. LLC*), 609 B.R. 589, 596 (Bankr. S.D. Tex. 2019); *In re Ritchey*, 512 B.R. 847, 857 (Bankr. S.D. Tex. 2014).

whether the TRC Parties are bringing affirmative claims and what constitutes property of Nelkin's

bankruptcy estate —is of no event and not binding on this Court.[157]

**e.  Whether Nelkin is judicially estopped from prosecuting its Motion to Enforce**

The TRC Parties assert that Nelkin is "judicially estopped from taking the position that

they currently assert" in the Motion to Enforce because of Nelkin's response to one of the TRC

Parties' objection to Nelkin's "Third Amended Chapter 11 (Subchapter V) Plan"[158] (the "*Proposed*

*Plan*") filed on November 11, 2024.[159] On December 31, 2024, in their objection to the Proposed

Plan,[160] the TRC Parties stated that:

> [T]he Debtor seeks to have this Court interfere with the jurisdiction of the Two
> Rivers Parties' property in the custody of the EDNY Court . . . . The Debtor's
> presumptive charging lien and the funds on deposit with the registry of the Clerk in
> the EDNY and the property escrowed are under the exclusive jurisdiction of that
> court. . . . The Debtor through a proposed plan provision, improperly seeks
> authority from this Court to release the funds to the Debtor which funds are on
> deposit with the EDNY.[161]

In response to this objection, Nelkin filed a motion to approve modifications to the

Proposed Plan in which Nelkin stated that "[a]fter discussions among the objecting parties, the

Debtor proposed certain modifications to the Plan which satisfies the objections of the Schreibers

and the Sub V Trustee."[162] The TRC Parties thus assert that "N[elkin] withdrew from its proposed

plan of reorganization its challenges to the jurisdiction of the EDNY Court and continuing with

the EDNY Litigation through conclusion and appeal and confirmed its Plan."[163]

---

[157] *Schreiber*, No. 15 CV 6861, 2025 U.S. Dist. LEXIS 108328, at *31. *In re Dogar-Marinesco*, No. 09-35544 (CGM), 2016 Bankr. LEXIS 4111, at *39-40 (Bankr. S.D.N.Y. Dec. 1, 2016) (to the extent a state court that considered defendants' claims found that defendants had not violated the discharge injunction, that ruling was void because the bankruptcy court had exclusive jurisdiction to decide that question).
[158] ECF No. 301
[159] ECF Nos. 408 at 1.
[160] ECF No. 317.
[161] ECF No. 317 at 6, 7, 8 (citations omitted).
[162] ECF No. 325.
[163] ECF No. 408 at 2.

Judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the Court's discretion.[164] Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.[165] "Judicial estoppel has three elements: (1) the party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."[166] The party asserting the doctrine of judicial estoppel has the burden of proving that it applies.[167] The TRC Parties take the position that Nelkin's removal of "objectionable language" from the Proposed Plan, was a concession by Nelkin that the TRC Parties may pursue the Fee Recovery Litigation in the EDNY post-discharge.[168]

The TRC Parties' argument based on judicial estoppel fails because Nelkin never took the position that the Fee Recovery Litigation may continue post-discharge in the EDNY. The TRC Parties do not identify which specific language was removed from the Proposed Plan that, when removed, constituted a prior inconsistent position for purposes of judicial estoppel.[169] Moreover, Nelkin stated that the removal of the language in the Proposed Plan "satisfies the objections of the Schreibers" but this is not a "clearly inconsistent" position on whether or not the Fee Recovery Litigation was discharged by the Confirmation Order.[170] Because the TRC Parties have not shown that Nelkin asserted a legal position that is plainly inconsistent with a prior position, the TRC Parties cannot show that the Court ever accepted a prior inconsistent position or that it was not made inadvertently.

---

[164] *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008).
[165] *In re Coastal Plains, Inc.*, 179 F.3d 197, 212 (5th Cir. 1999).
[166] *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015).
[167] *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 267 (5th Cir. 2012).
[168] ECF No. 408 at 3.
[169] ECF No. 408 at 1–3.
[170] ECF No. 325 at 3; *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (Judicial estoppel only applies when a position asserted by a party is "clearly inconsistent" with a previously asserted position).

As such, judicial estoppel does prevent Nelkin from taking the position that the continued prosecution of the Fee Recovery Litigation is a violation of this Court's Confirmation Order and discharge injunction.

**f.  Whether Nelkin and the TRC Parties agreed to continue the Fee Recovery Litigation post-discharge**

On August 28, 2023, the Court entered a temporary restraining order extending the automatic stay to Carol Nelkin and Jay Nelkin in certain pending litigation, including the remaining claims in the EDNY Litigation Case (the "*Temporary Restraining Order*").[171] On November 1, 2023, the TRC Parties and Nelkin obtained approval of an agreed order extending the date that the Temporary Restraining Order expired.[172]

The TRC Parties and Nelkin obtained approval of an agreed order on January 8, 2024, regarding resolution of the claims pending in the EDNY Litigation Case, including the Fee Recovery Litigation (the "*Agreed Order*").[173] Specifically, the TRC Parties and Nelkin agreed to participate in a mediation regarding claims pending in the EDNY Litigation Case and that the "temporary restraining order [Dkt No. 49] entered in Adversary No. 23-02005 is extended and shall run concurrently with the stay until terminated pursuant to this Order or upon termination by further Court order upon motion by a Party filed after the conclusion of the Mediation."[174]  The Court also entered its Memorandum Opinion & Order[175] on June 21, 2024 (the "*June 21, 2024 Order*"). In the June 21, 2024 Order, the Court denied the Debtor's request to vacate the Agreed Order and ordered that the "automatic stay of this bankruptcy case and the agreed temporary restraining order, found at

---

[171] Adv. Pro. 23-2005, ECF No. 5.
[172] Adv. Pro. 23-2005, ECF No. 49.
[173] ECF No. 91.
[174] ECF No. 91.
[175] ECF No. 257.

ECF No. 49 in the adversary proceeding, 23-2005, are terminated only to the extent that the Parties may conclude the [Fee Recovery Litigation], and any appeals therefrom."[176]

The TRC Parties assert that the Agreed Order is a post-petition agreement between the TRC Parties and Nelkin to litigate the Fee Recovery Litigation to conclusion including any and all appeals in the EDNY, which is undisturbed by the Plan and Confirmation Order.[177] Unfortunately for the TRC Parties, their interpretation of the Agreed Order is incorrect. The Agreed Order merely pertained to the automatic stay and the Temporary Restraining Order: it did not mention discharge.[178] Likewise, the June 21, 2024 Order merely enforced the terms of the Agreed Order.[179] "If a discharge is granted, the injunction of 11 U.S.C. §524 replaces the automatic stay upon discharge. Even if the Stay is lifted during the case, the discharge injunction begins at discharge and is unaffected by an order lifting the stay."[180] Thus, the Agreed Order and the June 21, 2024 Order have no bearing on whether the Fee Recovery Litigation has been discharged pursuant to 11 U.S.C. § 1191(a) and 1141(d) and enjoined from assertion by the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2).

g. **Whether the Fee Recovery Litigation is a defensive claim for setoff or recoupment that survives discharge**

In their briefing to the Court, the TRC Parties assert that they "were not required to file proofs of claim to "assert their claims defensively."[181] The TRC Parties are thus arguing that they are entitled to defensively assert setoff and recoupment.[182] The TRC Parties take it a step further

---

[176] ECF No. 257 at 4, 8.
[177] ECF No. 408 at 13.
[178] ECF No. 91.
[179] ECF No. 257 at 4, 8.
[180] *In re McCulloch*, No. 12-20084, 2013 Bankr. LEXIS 4257, at *5 (Bankr. S.D. Tex. Oct. 10, 2013). *See also In re Schwartz*, No. 12-37089-LMI, 2020 Bankr. LEXIS 2477, *5 (Bankr. S.D. Fla. 2020) ("[A] Stay Relief Order has no bearing on what is and is not a violation of the discharge injunction; the automatic stay expires upon a debtor getting a discharge.").
[181] ECF No. 404 at 11.
[182] ECF No. 404 at 11.

and assert that the TRC Parties are not seeking an affirmative recovery from Nelkin or its estate but are attempting to minimize what Nelkin takes from the TRC Parties and the Settlement Proceeds.[183]

A debtor's discharge does not bar a creditor from asserting its right to setoff if the requirements under 11 U.S.C. § 553 are met.[184] Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
> (1) the claim of such creditor against the debtor is disallowed; ...
>
> (3) the debt owed to the debtor by such creditor was incurred by such creditor—
>
> (A) after 90 days before the date of the filing of the petition;
>
> (B) while the debtor was insolvent; and
>
> (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).[185]

To support their setoff argument, the TRC Parties point to *In re: SVB Financial Group*,[186] where the FDIC as receiver for Silicon Valley Bank, N.A. objected to a debtor's plan of reorganization because it extinguished the FDIC's defensive setoff rights.[187] The debtor argued that because the FDIC failed to file a proof of claim, the defensive setoff claim was extinguished by confirmation of the plan.[188] There, the Court agreed with the FDIC that it was not required to

---

[183] ECF No. 404 at 12.
[184] *IRS v. Luongo* (*In re Luongo*), 259 F.3d 323, 333 (5th Cir. 2001) ("[A] debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff.").
[185] 11 U.S.C. § 553(a).
[186] 662 B.R. 53 (Bankr. S.D.N.Y. 2024).
[187] *Id.* at 56.
[188] *Id.* at 66.

file a proof of claim in order to preserve its defensive claims.[189]   However, as noted by *In re: SVB Financial Group*, it is well settled that § 553 does not create a right of setoff, but preserves the right if it exists under applicable non-bankruptcy law.[190] For example, In *In re: SVB Financial Group*, the Court looked to 12 U.S.C. § 1822(d), which was found to create a statutory right of setoff for the creditor.[191]   The creditor has the burden to establish that the right to setoff exists.[192]

Likewise, a party asserting recoupment has the burden to show that it factually fits within the parameters of "the narrow doctrine of recoupment."[193] Recoupment is a defense that allows a creditor to offset mutual debts arising from the same transaction or contract. To assert recoupment in bankruptcy, a party must satisfy two key requirements, to wit: (1) there must have been some type of overpayment made to the debtor; and (2) both the creditor's claim and the amount owed to the debtor must arise from a single contract or transaction.[194] Recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim."[195] The justification for the recoupment doctrine is that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor."[196]

A key distinction between recoupment and setoff is that "[r]ecoupment is a demand asserted to diminish or extinguish the plaintiff's demand that arises out of the same transaction

---

[189] *Id.*
[190] *Id.* at 67; *Citizens Bank v. Strumpf*, 516 U.S. 16, 19 (1995).
[191] *In re SVB Fin. Grp.*, 662 B.R. at 68.
[192] *Felton v. Noor Staffing Group, LLC* (*In re Corporate Res. Servs. Inc.*), 564 B.R. 196, 204 (Bankr. S.D.N.Y. 2017). *See In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by finding an independent right of setoff under non-bankruptcy law").
[193] *In re Abco Indus.*, 270 B.R. 58, 61 (Bankr. N.D. Tex. 2001).
[194] *Kosadnar v. Metropolitan Life Ins. Co.* (*In re Kosadnar*), 157 F.3d 1011, 1014 (5th Cir. 1998).
[195] *United States Abatement Corp. v. Mobile Expl. & Producing U.S.* (*In re United States Abatement Corp.*), 79 F.3d 393, 398 (5th Cir. 1996).
[196] *Id.*

forming the basis of the plaintiff's claim; setoff, on the other hand, arises out of a transaction

extrinsic to the plaintiff's claim."[197] Additionally, unlike setoff, which is governed by and subject

to the limitations imposed by § 553, the doctrine of recoupment is an equitable remedy not

restricted by the Code.[198]

Although there is no binding Fifth Circuit precedent on whether a proof of claim must be

filed to assert a right to recoupment or setoff, bankruptcy courts in and out of the Fifth Circuit have

recognized that a creditor need not file a proof of claim to *defensively* assert setoff or

recoupment.[199] However, courts have held that a proof of claim is required when a creditor asserts

a claim that seeks an affirmative recovery against the debtor's estate because doing so implicates

the claims allowance process.[200]

Thus, the Court finds that the TRC Parties are correct in that they need not file proofs of

claim to *defensively* bring claims for setoff or recoupment that do not result in any affirmative

recovery to them.[201] Nevertheless, TRC Parties' arguments for setoff and recoupment fail for four

reasons.

First, by failing to file proofs of claim and asserting that they are not creditors of Nelkin,

the TRC Parties have abandoned the Fee Recovery Litigation. Courts in the Fifth Circuit have

---

[197] *Gober v. Terra+Corp.* (*In re Gober*), 100 F.3d 1195, 1207 (5th Cir. 1996). *See also Rew Enters. v. Premier Bank, N.A.*, 49 F.3d 163, 171 (5th Cir. 1995) ("Recoupment differs from setoff in that 'setoff is a counter demand which a defendant holds against a plaintiff arising out of a transaction extrinsic of plaintiff's cause of action.'").
[198] *Cooper v. SSA*, 131 F.4th 995, 1008 (9th Cir. 2025).
[199] *See e.g., Northstar Offshore Grp., LLC v. Peregrine Oil & Gas LP* (*In re Northstar Offshore Grp., LLC*), Nos. 16-34028, 17-03448, 2018 Bankr. LEXIS 2817, at *17 (Bankr. S.D. Tex. Sep. 14, 2018) (*citing In re Columbia Hosp. for Women Med. Ctr., Inc.*, 461 B.R. 648 (Bankr. D.C. 2011); *Camelback Hospital, Inc. v. Buckenmaier* (*In re Buckenmaier*), 127 B.R. 233 (B.A.P. 9th Cir. 1991).
[200] *In re Northstar Offshore Grp., LLC*, Nos. 16-34028, 17-03448, 2018 Bankr. LEXIS 2817, at *17 (citing *In re G.S. Omni Corp.*, 835 F.2d 1317, 1318-19 (10th Cir. 1987); *In re Abco Indus.*, 270 B.R. 58, 63 (Bankr. N.D. Tex. 2001) ("The failure to file a proof of claim does not prevent the creditor from asserting the right [of setoff] as a defensive matter, although the creditor may be barred from collecting a dividend with respect to the amount of the claim that exceeds the creditor's offsetting debt to the debtor.") (quoting 5 *Collier on Bankruptcy* P 553.071 (15th ed. rev. June 2000)).
[201] *See In re Abco Indus.*, 270 B.R. at 63 ("[T]he defensive use of setoff (or recoupment) is not necessarily precluded by the failure to file a proof of claim.").

dismissed claims upon finding that a party abandoned them by representing to the court that the claims would not be pursued.[202] The TRC Parties urge the Court that the Fee Recovery Litigation has not been discharged because they are defensive claims for setoff and recoupment.[203] However, a party asserting recoupment and setoff must be a creditor of the debtor. Section 553(a) explicitly states that the Bankruptcy Code does not affect "any right of a *creditor* to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case."[204] This provision establishes that the right to setoff is limited to creditors who meet the statutory requirements.[205] *In re SVB Fin. Grp*. confirms that: (i) setoff is governed by § 553; (ii) setoff is a right of creditors; (iii) the creditor and debtor must both have a claim against the other and each must owe the other a debt.[206] Likewise, recoupment is a defense available to a creditor against the debtor.[207] Since it is clear that only a creditor may assert setoff or recoupment and the TRC Parties have repeatedly admitted that they are not creditors of Nelkin, the Court finds that the TRC Parties represented to the Court that they would not be pursuing any claims against Nelkin, including claims for setoff and recoupment.[208] Thus, the TRC Parties have abandoned their Fee Recovery Litigation, both as an offensive and defensive claim.

---

[202] *See e.g. Martinez v. Tex. HHS Comm'n,* No. 4:20-cv-03706, 2021 U.S. Dist. LEXIS 105192, at *12 (S.D. Tex. June 4, 2021)(dismissing claims with prejudice as "voluntarily abandoned"); *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 913 n.17 (S.D. Tex. 2015)(same); *Ettinoffe v. Sheikh*, No. 4:21-CV-02646, 2022 U.S. Dist. LEXIS 182151, at *4 (S.D. Tex. Oct. 4, 2022)(dismissing with prejudice all claims that, "inexplicably," a parties' counsel "affirmatively abandoned"); *Udeigwe v. Tex. Tech Univ.*, 733 F. App'x 788, 791, 794-95 (5th Cir. 2018) (affirming dismissal with prejudice where the district court "treated [the party's] remaining claims as abandoned and dismissed them with prejudice").

[203] ECF No. 404 at 2.

[204] 11 U.S.C. § 553 (emphasis added).

[205] See *IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 334 (5th Cir. 2001), citing *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987).

[206] *In re SVB Fin. Grp*., 2024 Bankr. LEXIS 1790 (Bankr. S.D.N.Y. Aug. 2, 2024) at *28-29 (Bankr. S.D.N.Y. Aug. 2, 2024). *See also Braniff Airways*, 814 F.2d at 1035 (5th Cir. 1987); *In re Corland Corp.*, 967 F.2d 1069, 1076 (5th Cir. 1992).

[207] *DDR Weinert, Ltd. v Ovintiv USA, Inc*., 2025 U.S. App. LEXIS 4603, at *5 (5th Cir Feb. 27, 2025); *Kosadnar v Metro. Life Ins. Co.* (*In re Kosadnar*), 157 F.3d 1011, 1014 (5th Cir 1998).

[208] *See e.g.,* ECF No. 404 at 3.

Second, the TRC Parties, as a matter of law, cannot meet their burden of showing their entitlement to either setoff or recoupment. There are "two general requirements for recoupment: (1) some type of overpayment must have been made, and (2) both the creditor's claim and the amount owed the debtor must arise from a single transaction."[209] The TRC Parties have not asserted that they made any payment whatsoever to Nelkin and therefore most certainly cannot show that they made an overpayment. Similarly, a party asserting setoff in bankruptcy must show they are a creditor of the debtor.[210] The TRC Parties admit that they are not creditors of Nelkin and assert that they are "attempting to minimize what Nelkin takes from the Two Rivers Parties and the Settlement Proceeds."[211] For a creditor to defensively assert a setoff or recoupment claim post-discharge, there must be a claim asserted by the debtor against the creditor.[212] The TRC Parties have not identified which specific claim by Nelkin they are purportedly defending against. In fact, the record contains no evidence that any claim remains pending in the EDNY Litigation Case other than the Fee Recovery Litigation, in which the TRC Parties are seeking vacatur of Nelkin's property interest in the Charging Lien and Settlement Proceeds.[213] Thus, as a matter of law, the Court finds that TRC Parties cannot meet their burden of showing an entitlement to setoff or recoupment.

Third, the TRC Parties' position that the Fee Recovery Litigation is a defensive claim assumes that Nelkin has no vested property interest in the Settlement Proceeds and that Nelkin is attempting to recover property that is soley the property of the TRC Parties.[214] As this Court explained *supra*, that is not the case, and in fact, the TRC Parties are the ones seeking to recover

---

[209] *DDR Weinert, Ltd. v Ovintiv USA, Inc.*, 2025 U.S. App. LEXIS 4603, at *5.
[210] *Braniff Airways*, 814 F.2d at 1035 (5th Cir. 1987).
[211] ECF No. 404 at 12.
[212] *Herod v. Sw. Gas Corp.* (*In re Gasmark Ltd.*), 193 F.3d 371, 374 (5th Cir. 1999); *Braniff Airways v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987).
[213] ECF Nos. 405-4; 405-5; 405-6.
[214] ECF No. 404 at 12.

property from Nelkin.[215] As such, the Court finds that the TRC Parties' Fee Recovery Litigation is an affirmative claim against Nelkin which cannot be asserted defensively, and neither setoff nor recoupment are applicable here.

Fourth, the TRC Parties' setoff claim is impermissible for an additional independent reason. "The right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim."[216] As recognized by the Court in *Continental:*

> allowing [a creditor] under the facts of this case to come forward after the plan of reorganization has been confirmed and *sua sponte* decide that it has a valid set-off without timely filing a proof of claim and asserting the set-off in the reorganization proceedings, has a probability of disrupting the plan of reorganization. It may also unnecessarily protract the bankruptcy proceedings and consume judicial resources. Furthermore, it is unfair to other creditors and the debtor, and can conceivably undermine the plan of reorganization and the objectives and structure of the Bankruptcy Code.[217]

Here, the TRC Parties have not shown that they asserted a right to set-off before Plan confirmation. TRC Parties have not filed any proofs of claim.[218] Thus, the Court finds that by failing to file any proofs of claim and failing to assert a right to setoff before confirmation of the Plan, the TRC Parties have waived any right to setoff.[219]

Accordingly, because the TRC Parties did not file proofs of claim and the TRC Parties' Fee Recovery Litigation is an affirmative claim against Nelkin, the Fee Recovery Litigation was discharged pursuant to 11 U.S.C. §§ 1191(a) and 1141(d) and the TRC Parties and Mr. Rosenblatt

---

[215] *See supra* Section III.C.a, b.

[216] *United States v Cont. Airlines (In re Cont. Airlines)*, 134 F3d 536, 542 (3rd Cir. 1998); *See also In re Mangia Pizza Invs.,* LP, 480 B.R. 669, 689 (Bankr. WD Tex 2012) ("The right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim.") (*citing In re Continental Airlines*, 134 F.3d at 542)).

[217] *In re Continental Airlines*, 134 F.3d at 542.

[218] ECF No. 120-7.

[219] *In re Continental Airlines*, 134 F.3d at 542; *In re Mangia Pizza Invs.,* LP, 480 B.R. at 689.

were enjoined by the Confirmation Order and Plan from prosecuting the Fee Recovery Litigation pursuant to 11 U.S.C. § 524(a)(2).

### h. Whether there is any fair ground of doubt that the TRC Parties and Mr. Rosenblatt violated the discharge injunction of the Confirmation Order pursuant to 11 U.S.C. §§ 1191(a), 1141(d) and 524(a)(2)

The discharge injunction under the bankruptcy code operates as a statutory injunction against attempts to collect discharged debts as personal liabilities of the debtor.[220] Violations of this injunction are treated as violations of a court order, and the consequences include civil contempt.[221] The Supreme Court held that "a court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct."[222] "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[223] In other words, the "no fair ground of doubt" standard is met when "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."[224] The Court has already determined that the TRC Parties and Rosenblatt violated the discharge injunction effectuated by the Plan and Confirmation Order pursuant to 11 U.S.C. §§ 1191(a), 1141(d) and 524(a)(2) by continuing to prosecute the Fee Recovery Litigation after confirmation of the Plan.[225] The Court will now determine whether there is any fair ground of doubt that the Fee Recovery Litigation was discharged pursuant to 11 U.S.C. §§ 1191(a) and 1141(d) and that Mr. Rosenblatt

---

[220] 11 U.S.C. § 524(a)(2).
[221] *Fauser v. Green Tree Servicing, LLC* (*In re Fauser*), 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016).
[222] *Taggart v. Lorenzen*, 587 U.S. 554, 556 (2019).
[223] *Id.* at 560.
[224] *Id.*
[225] *See supra* Section III.C.c.

and the TRC Parties were enjoined from asserting the Fee Recovery Litigation under the Plan and Confirmation Order pursuant to 11 U.S.C. §524(a)(2).[226]

The TRC Parties' and Mr. Rosenblatt's position that they did not violate the discharge provisions in the Confirmation Order is based on their belief that the Fee Recovery Litigation is a *defensive* claim and not subject to discharge because the Settlement Proceeds are solely property of the TRC Parties.[227] The Plan specifically lists Nelkin's interest in the Settlement Proceeds as an asset, which vested in Nelkin upon confirmation of the Plan and entry of the Confirmation Order pursuant to §§ 1141(c) and 1141(d).[228] Thus, the Court finds that it was objectively unreasonable for the TRC Parties and Mr. Rosenblatt to rely on their assumption that the Settlement Proceeds were solely property of the TRC Parties.

The TRC Parties and Mr. Rosenblatt have relied on a plethora of other legal principals in opposing the Motion to Enforce, including setoff and recoupment; the *in rem* exception to discharge under *Johnson*;[229] *custodia legis*; and *judicial estoppel*.[230] As explained *supra*, these legal principals have no application here, and the TRC Parties' and Mr. Rosenblatt's arguments relying on them wholly lack merit.[231]

As for the June 8, 2025 Order,[232] given that the TRC Parties and Mr. Rosenblatt knew or should have known that there was a dispute as to whether the Settlement Proceeds became property of Nelkin's bankruptcy estate, the Court finds that it was objectively unreasonable for the TRC

---

[226] *See Taggart*, 587 U.S. at 560.
[227] *See generally* ECF Nos. 404; 408.
[228] ECF No. 373 at 15, 23; *see supra* Section. III.C.a.
[229] 501 U.S. 78 (1991).
[230] *See generally* ECF No. 408.
[231] *See supra* Section III.C.a–g.
[232] *Schreiber v. Friedman*, No. 15 CV 6861, 2025 U.S. Dist. LEXIS 108328, at *31 (E.D.N.Y. June 8, 2025).

Parties and Mr. Rosenblatt to rely on a magistrates judges' interpretation of what constituted property of Nelkin's bankruptcy estate as such determination is the sole province of this Court.[233]

Thus, the Court finds that there was not an objectively reasonable basis for Mr. Rosenblatt and the TRC Parties to conclude that the Fee Recovery Litigation was not discharged pursuant to 11 U.S.C. §§ 1191(a) and 1141(d) and that Mr. Rosenblatt and the TRC Parties were not enjoined from prosecuting the Fee Recovery Litigation after Plan confirmation by the plain language of the Plan and Confirmation Order pursuant to 11 U.S.C. § 524(a)(2).

Accordingly, the Court finds that the TRC Parties and Mr. Rosenblatt are in civil contempt because they violated the discharge injunction effectuated by the Plan and Confirmation Order pursuant to 11 U.S.C. §§ 1191(a), 1141(d) and 524(a)(2) by continuing to prosecute the Fee Recovery Litigation after confirmation of the Plan.[234]

i.   **Damages and sanctions**

Nelkin requests that the Court require the TRC Parties and Mr. Rosenblatt to compensate Nelkin for all costs and damages attributable to their violations of this Court's orders and also award Nelkin and its counsel the reasonable costs and attorney fees associated with this Motion to Enforce.[235] Nelkin also requests this Court to sanction the TRC Parties and Mr. Rosenblatt.[236]

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."[237] Nelkin brought this Motion to Enforce because the TRC Parties and Mr. Rosenblatt violated the discharge injunction effectuated by the

---

[233] 28 U.S.C. § 1334(e)(2)(1). *See supra* Section III.C.d.
[234] ECF No. 373.
[235] ECF No. 400 at 23.
[236] ECF No. 400 at 23.
[237] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

Plan and Confirmation Order pursuant to 11 U.S.C. §§ 1191(a), 1141(d) and 524(a)(2) by continuing to prosecute the Fee Recovery Litigation after confirmation of the Plan.[238] Therefore, the Court finds it appropriate to award Nelkin compensation for its reasonable and necessary attorney fees and costs incurred in bringing and prosecuting the instant Motion to Enforce.[239] Nelkin's request for recovery of losses caused by the TRC Parties' and Mr. Rosenblatt's violation of the discharge provisions of the Plan and Confirmation Order, other than compensation of attorney fees and costs, must be denied as Nelkin failed to provide any evidence that Nelkin suffered any loss other than incurrence of attorney fees and costs.

Accordingly, for the reasons stated herein, the Court finds that Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt are in civil contempt of this Court's confirmation order entered on February 14, 2025 at ECF No. 373 by violating the discharge injunction entered in this case. The Court further finds that in order to purge themselves of the civil contempt, each of Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate) Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt must, on or before **Thursday, October 16, 2025,** seek dismissal of their causes of action against Nelkin & Nelkin, P.C. in the case styled as *Scheiber, et al. v. Friedman, et al*., Cause No. 15-cv-06861, pending in the Eastern District of New York with prejudice. Until such time as Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate) Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt are not in compliance with the Court's accompanying Order, then effective **Friday, October 17, 2025** and every day thereafter, each of Mr. Steven Schreiber (Individually and as purported representative

---

[238] ECF No. 400.
[239] *See McClure v. Bank of Am.* (*In re McClure*), 420 B.R. 655, 662 (Bankr. N.D. Tex. 2009) ("Creditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not.").

of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt shall be jointly and severally liable for daily sanctions of $100 for each day they remain out of compliance. Finally, the Court finds that Mr. Steven Schreiber (Individually and as purported representative of Eugene Schreiber's Estate), Two Rivers Coffee, LLC and Mr. Raphael Rosenblatt, jointly and severally, must pay the reasonable attorney fees and costs incurred by Nelkin & Nelkin, P.C in prosecuting this instant motion for contempt to Walker & Patterson, P.C., subject to objections as permitted in this Court's accompanying Order.

### IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED October 1, 2025**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**